This is a suit in which plaintiff claims balance due under the terms of a contract dated September 30, 1941. *Page 517 
The facts show that plaintiff, owner of a dragline, by letter of date September 30, 1941, directed to P.J. McInerney Company of Shreveport, made a proposal with reference to loading gravel in trucks at defendant's gravel pit near Minden, which proposal was accepted for the P.J. McInerney Company by P.J. McInerney.
Between the dates of October 9th and November 19th, 1941, both inclusive, plaintiff loaded 14,028 cubic yards of gravel, for which he was paid the sum of twelve cents per cubic yard, in accordance with the provisions of the contract, amounting to $1,683.36. In this suit plaintiff claims a balance of $908.64 from the defendant on the basis of a minimum guaranty under the contract, which he contends was not fulfilled by the defendant.
The principal defenses asserted, in addition to general denial of plaintiff's contentions, are that plaintiff's equipment was not satisfactory and could not perform the work demanded; that the machine was not properly equipped for the performance of night work; that the operator of plaintiff's machine was inefficient; that plaintiff was charged with the duty of maintaining roads, and that his failure to comply with this obligation resulted in loss of time, and that these were the sole and only causes of the failure of plaintiff to move a greater amount of gravel than was actually handled during the period referred to.
A careful examination of the record convinces us that the decision in this case must turn upon interpretation of the contract between the parties, which contract, in words and figures, reads as follows, to-wit:
"Ruston, La. 9-30-41.
"P.J. McInerney Co.,
"Shreveport, Louisiana
"Gentlemen:
"Confirming verbal agreement of today with your Mr. Kilpatrick in Re loading gravel in trucks at your pit near Minden; I agree to furnish my model 25 Northwest dragline equipped with 1 Cu. Yd. bucket, together with competent operator and oiler and such supplies and replacements as may be necessary, and to load pit run gravel from your pit into trucks for the sum of $0.12 (twelve cents) per cubic yard truck measure at the pit. I agree to carry compensation insurance for my employees and to transport the dragline to the work and away from it at my expense. It is understood that my sole and only obligation for the above compensation are as stated.
"The amount of gravel loaded by the machine is to be checked daily and a ticket issued by your representative showing the amount. Payment to me is to be made in full on the first and fifteenth of each month for the amounts so shown at the above price. In case payment is not so made, you agree that this contract shall constitute and assignment to me of any amount due you for gravel in sufficient amount to pay what is due me.
"You agree to furnish sufficient trucks and all other hauling facilities necessary so that the dragline may operate at a minimum of eighty Cu. Yd. per hour when working and that the minimum amount of yardage to be loaded by the machine in any given month shall be 10,000 Cu. Yds. The minimum monthly yardage shall not apply when weather conditions prevent working for fifteen days or more per month.
"In case you should want to use the machine for stripping or other work besides loading at the pit an hourly price of $8.00 per hour for machine personnel and supplies is to be paid.
"If you should want to move the machine to other pits you may do so, but my consent in writing must first be obtained; You are to pay costs of transportation to other location and back.
"It is agreed that this machine shall be operated under your supervision and according to your instructions and that in case it is lost, destroyed or rendered unfit for further service while on your work, the sum of $8500 (Eight Thousand five hundred dollars) is to be paid as liquidated damages.
"In case you have no work for the machine but want it to remain at the pit in readiness for service, a ready to serve charge of $75 per week for a period of not longer than four weeks is agreed on. (This does not apply to times of delay due to weather.
"It is now my understanding that you now have contracts for gravel and that the machine will be immediately put to work when it is delivered on or before Oct-6-41. If for any reason due to fault or failure on your part this is not done, it is agreed the ready to serve clause above shall apply until work is started.
"It is agreed that unless the conditions as above stated are violated, this machine will *Page 518 
remain on the above work until P.J. McInerney Co. complete their contracts for furnishing gravel from this pit.
"Signed C.B. Vaughan
"Accepted
"P.J. McInerney Co.
"by P.J. McInerney"
Before proceeding with a discussion of the interpretation of the contract provision in dispute, we will dispose of the other issues raised in defendant's answer.
Defendant has failed to sustain the allegation that there was any substantial failure on the part of plaintiff to properly maintain the machine. Aside from some testimony as to minor breakdowns and repairs, of a nature which should have been expected, and for which no blame can be attached to the plaintiff, there is no evidence of sufficient weight to indicate any damage resulting to defendant, particularly in view of the fact that the testimony bears out plaintiff's contentions that the operating time for which he claims compensation under the contract is exclusive of delays due to cessation of operations by reason of breakdowns and consequent repairs.
There is no showing that there was any undue delay in equipping the machine with lights for night operation, and, in view of the fact that there is no provision for this contingency in the contract, we do not consider this to be a relevant defense.
There is no obligation set forth in the contract with reference to maintenance of roads, and for this reason that portion of the defense which is based upon this claim cannot be considered.
The testimony does not bear out the charge of inefficiency made against the operator of the machine.
For these reasons the specific defenses set forth must be rejected.
That provision of the contract which must finally determine the existing dispute is stated in the third paragraph of the agreement set forth above, which reads as follows: "You (defendant) agree to furnish sufficient trucks and all other hauling facilities necessary so that the dragline may operate at a minimum of 80 cu. yd. per hour when working, and that the minimum amount of yardage to be loaded by the machine in any given month shall be 10,000 cu. yds. The minimum monthly yardage shall not apply when weather conditions prevent working for fifteen days or more per month."
The last sentence of the above-quoted paragraph, which refers to weather conditions, may be disregarded in view of the fact that there is no contention that weather conditions prevented the carrying out of the agreement, and, since more than 10,000 tons per month were moved during the actual working period, this particular provision necessitates no discussion.
The record shows that the machine operated a total of 270 hours, during the calendar period above set forth, in which total operating period it loaded 14,028 cubic yards of gravel, an average operating load of slightly under 52 cubic yards per working hour. The meat of plaintiff's contention is that under the contract the defendant was required to furnish sufficient trucks to permit operation of the dragline at a minimum of 80 cubic yards per hour. Working 270 hours at an operating rate of 80 cubic yards per hour, plaintiff contends that his machine would have moved 21,600 cubic yards of gravel, which, at the contract rate of twelve cents per cubic yard, would entitle him to receive $2,592.00. But, so plaintiff claims, because of defendant's failure to furnish proper trucking facilities, only 14,028 cubic yards of gravel were actually moved, for which defendant paid plaintiff $1,683.36, and that by reason of such failure on the part of defendant, plaintiff is due the balance of $908.64.
There is a mass of testimony in the record which is admittedly irrelevant, counsel for both plaintiff and defendant in their zeal and diligence having wandered far afield from the pertinent issues. We therefore confine ourselves to those issues and to that testimony which is relevant.
Defendant contends that his only obligation under the contract was to assure plaintiff of facilities for moving a minimum of 10,000 cubic yards of gravel in any given month, and, since it is conceded that more than this amount was moved on the basis of a monthly rate, payment was due only for such amount actually moved.
The fundamental rules of construction and interpretation of contracts which apply to a determination of this question are too well settled to necessitate citation of authorities. Those rules which have particular application to this case provide that the contract as written must govern the relationship of the parties and their respective obligations, and that the intent of the parties is to be determined by the words of the contract, where there is no *Page 519 
ambiguity, and where such interpretation leads to no absurd consequences.
Unless there is such ambiguity and uncertainty with reference to the written provisions of the contract as to indicate the need for explanation as to the intent of the parties, there is no ground for looking beyond the written words of the agreement.
"In construing and determining the effect of a written contract, intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument, and when such contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed." 17 C.J.S., Contracts, Page 698, § 296, Salles v. Stafford, Derbes Roy, 173 La. 361, 137 So. 62, Jackson v. Jackson, La.App., 163 So. 175.
The clear distinction between the positions assumed by plaintiff and defendant in the instant case may be best expressed by saying that plaintiff does not regard the guaranties set forth in the paragraph under consideration as being conflicting or ambiguous, but accepts the whole provision as a consistent and relating guaranty and obligation on the part of the defendant; defendant, on the other hand, claims that the paragraph should be interpreted as embracing an alternative condition, and that the fulfillment of the minimum monthly loading provision eliminates the need for consideration of the preceding provision.
Defendant rests upon the theory that when plaintiff actually loaded more than 10,000 cubic yards of gravel per month, defendant's obligations were fulfilled. Plaintiff asserts that an average hourly rate of operation was an obligation upon defendant, regardless of compliance with the minimum monthly total guaranty.
If a reasonable construction can be placed upon the provision in question which will preserve all of its elements, it is the duty of the court to so construe the agreement.
Courts should not assume that clauses written in a contract were intended to be ambiguous, repugnant or contradictory, and therefore no one provision taken alone should be construed in such manner as to raise a presumption of variance with any related provision.
It appears to us that the meaning and intent of the provision is plain. Defendant was bound to furnish trucks and hauling facilities to such extent as would permit plaintiff to operate his machine at a minimum rate of 80 cubic yards per hour when working, and to guarantee a minimum amount of 10,000 cubic yards in any given month.
Briefly stated, it is the contention of plaintiff that the obligations set forth are conjunctive, while defendant would construe the obligations as being disjunctive, or alternative.
A careful study of the meaning and use of the word "and" confirms us in the belief that the common meaning expresses "a relation", "an addition". 3 Words and Phrases, Permanent Edition, pp. 394 to 443. Whether the word is used to connect words, phrases or full sentences, it must be accepted as binding together and as relating the one to the other. Considered in this light it would appear obvious that the assumption of one obligation by defendant was intended to be definitely related to the assumption of another obligation.
To accept plaintiff's theory of construction would be in effect to hold that defendant was bound under the contract to assure a certain minimum rate of operation, and also to guarantee a certain minimum volume of operation. It is our opinion that this is the logical and reasonable interpretation of the agreement.
We are supported in this conclusion by the knowledge that an acceptance of defendant's interpretation would utterly nullify the first part of the paragraph preceding the words "and that the minimum amount * * *". If the purpose of the guaranty was simply to assure plaintiff of a minimum volume of operation per month, what was the necessity of the first provision? If the sole obligation of defendant was to assure a certain monthly volume, the hourly rate of operation could have no import and any provision affecting such hourly rate was meaningless as mere surplusage. We cannot find any justification for a contention which would relieve defendant of the plain duty of furnishing sufficient facilities to permit a minimum hourly rate of operation by plaintiff's machine.
Further confirmation of this conclusion may be given by breaking down the provision into its component parts. The particular provision under consideration could *Page 520 
have read: "You agree to furnish sufficient trucks and other hauling facilities necessary so that the dragline may operate at a minimum of 80 cubic yards per hour when working."
Such a provision would leave no doubt as to the obligation of the defendant, but while assuring the plaintiff of a certain rate of operation it would not have provided sufficient guaranty of earnings to justify the contract on his part. It is obvious that defendant might have complied with his obligation by furnishing adequate hauling facilities for any number of hours per month, from one hour up, and plaintiff would then have no recourse by which he might assure himself of adequate compensation for the use of his machine.
It also follows that the particular provision might have read as follows: "(You agree that) the minimum amount of yardage to be loaded by the machine in any given month shall be 10,000 cubic yards."
Such a provision would have protected the plaintiff to the extent of assuring him a minimum return, at the contract price of twelve cents per cubic yard, of $1,200 in any given thirty-day period. But it is at once apparent that under such a provision plaintiff's machine might actually operate an excessive number of hours at a very low rate of operation, thus entailing a burden of cost upon plaintiff entirely disproportionate to the returns involved.
Viewing the question in this light it must appear that each of the provisions was of essential importance; that the incorporation of both provisions was desirable. Such being the case, it is not the province of the court to go beyond the expression of the parties.
Where there is any uncertainty or ambiguity apparent in the wording of an agreement, it is not only the right, but the duty, of courts in determining the intent of the parties to consider evidence in addition to and in explanation of the contractual provisions. But where the words of the contract are plain and unambiguous, and where they may be accorded a reasonable and effective interpretation, then in such event the provisions must be enforced as written. Courts cannot be concerned with the wisdom of agreements when such agreements have been assented to by the parties themselves. Salles v. Stafford, Derbes Roy, cited supra.
Since we have reached our conclusion by reference only to the wording of the agreement itself, it is unnecessary to consider testimony which might have the effect of varying, altering or changing the clearly expressed written words of the agreement between the parties.
For the reasons expressed, the judgment of the district court is affirmed, with costs.
TALIAFERRO, J., concurs.
DREW, J., recused. *Page 610