HAMITER, Justice.
 

 The interpretation of a provision of an oil, gas and mineral lease is required in determining this litigation.
 

 On February 17, 1944, plaintiffs, Dewey D. and Arthur A. Angelloz, granted the lease, which had a primary term of three years and covered approximately 1253 acres, to the Denkmann Lumber Company in consideration of $12,000 cash in hand paid and of certain stipulated covenants and conditions.
 

 The lease was prepared on a printed form, except as to its paragraph 4 which was wholly typewritten and was pasted to such form. The typewritten paragraph, containing the disputed provision, recites as follows:
 

 “If operations for the drilling of a well be not commenced on said land on or before the 17 day of May, 1944, this lease shall terminate. In the event that said first well to be drilled is a commercial producer of either oil or gas, Lessee agrees to begin operations for the drilling of a second well at some location on the land leased hereby within 12 months from the date of this lease, or to pay to Lessor the sum of Twelve Thousand ($12,000) Dollars in cash in lieu of the drilling of said second well. Should this payment be made to Lessor instead of drilling the second well as aforesaid, or should two wells be drilled either of which is a producer, this lease shall be in full force and effect so long as oil, gas and other minerals are produced from the land in paying quantities anything herein to the contrary notwithstanding. In the event that the first well is a dry hole, the operations for the drilling of a second well shall be 'begun by Lessee within 12 months from the date of this lease, or within said period there shall be paid to Lessor by Lessee $10 per acre, which payment shall cover the privilege of deferring commencement of operations for 'the drilling of a well for 12 months from said date. In like manner and upon like payments during the primary term, the commencement of such operations may be further deferred for like period for the same number of months successively.”
 

 Shortly after the execution of the lease the Denkmann Lumber Company assigned it 'to the Southwestern Qil and Refining Company, defendant herein.
 

 Prior to May 17, 1944, or within 90 days-from the date of the contract, operations for the drilling of a well were commenced; but from them a dry hole resulted. Thereafter, no second well was started.
 

 Before the expiration of the first year the lessee tendered to t'he lessors as delay rentals the sum of $12,530, or $10 per acre
 
 *1059
 
 for the 1253 acre tract leased. Whereupon a dispute arose over that provision of paragraph 4 which relates to the commencement of a second well, or the making of a specified payment, if the first well drilled proved to be a dry hole. The lessee (defendant) maintained that under such provision the payment of $10 per acre, or the total amount of $12,530, was for delay rentals to keep the lease in full force and effect during the second year without the necessity of drilling a second well. The lessors (plaintiffs) contended, on the other hand, that not only was payment of the mentioned sum necessary as rentals, but that the lessee was obligated additionally to pay a like amount in lieu of commencing a second well during the first 12 months; hence, they demanded a total payment of $25,060.
 

 Since all parties desired that the lease be kept in effect, for the second year, a written agreement was entered into on February 16, 1945, or one day before the expiration of the first year, whereby lessee deposited in lessors’ bank account the sum of $12,530, and the parties stipulated that lessors would 'institute the instant proceedings to determine whether such payment had 'the effect of extending the lease for the second year without any other consideration, or whether the lessee owed the demanded additional sum of $12,530.
 

 On the trial of the case on the merits plaintiffs introduced in evidence the original lease, the assignment from the Denk-mann Lumber Company to defendant, the agreement of the parties of February 16, 1945, and they then rested. The defendant, thereupon, offered the testimony of Mr. J. Blanc Monroe, an attorney of New Orleans, which had been taken out of court under oral examination by counsel for all parties, and it also offered the answers of Messrs. Fred' W. Reimers, W. H. Giles and L. F. Statton (representatives of the original lessee) to interrogatories and cross-interrogatories propounded to them. To all of the offerings plaintiffs’ counsel objected on the ground that parol evidence is inadmissible to vary or alter the terms of a written contract. The district judge reserved his ruling and admitted the evidence subject to the objection.
 

 In rebuttal, with reservation of all rights under the obj ection, testimony was given by .Mr. Arthur A. Angelloz, a plaintiff, and by Mr. Samuel Cashio, one of plaintiffs’ attorneys. Also, plaintiffs introduced in evidence a letter (hereinafter quoted in full) dated February 16, 1944, written by Mr. Dewey D. Angelloz to the Denkmann Lumber Company.
 

 There was judgment in favor of defendant dismissing the suit. In arriving at his decision the district judge, as stated in his assigned written reasons, considered the evidence to which objection had been urged, he then being of the opinion that it -was admissible for the purpose of explaining the intention of the parties with respect to the
 
 *1061
 
 disputed lease provision which he deemed ambiguous. From the judgment plaintiffs are appealing.
 

 On considering paragraph 4 of the contract, a provision of which is the basis for this controversy, we find the parties agreeing first that unless operations are commenced before May 17, 1944 (or within 90 days), the lease should terminate. Admittedly such operations were so commenced; hence, there was no termination of the lease on the named date. But the first well, on its completion, proved to be a dry hole, and, as a result, there was rendered inoperative the next succeeding two sentences of paragraph 4 which were to apply in the event of a producing well. The non-producing first well, instead, made applicable the controversial stipulation of the typewritten paragraph reading:
 

 “In the event that the first well is a dry hole, the operations for the drilling of a second well shall be begun by Lessee within 12 months from the date of this lease, or within said period there shall be paid to Lessor by Lessee $10 per acre, which payment shall cover the privilege of deferring commencement of operations for the drilling of a well for 12 months from said date.”
 

 On this last quoted stipulation plaintiffs predicate their contention that defendant obligated itself to pay $12,530 ($10 per acre for 1253 acres) in lieu of drilling a second well during the first 12 months, an amount in addition to the necessary rental payment. Defendant insists that the stipulation simply required it either to drill a second well or to pay rentals of $10 per acre for maintaining the lease during the second year.
 

 Plaintiffs’ contention would appear to have merit if it were not for the clause “ * * * which payment shall cover the privilege of deferring commencement of operations for the drilling of. a well for 12 months from said date.” With that clause eliminated the stipulation could well be construed as obliging the lessee to pay $10 per acre in lieu of commencing operations for a second well before the expiration of the first year. But the clause is a part of the agreement, not mere surplusage, and it must be given effect.
 

 The clause relates to and modifies the provision immediately preceding it which grants to lessee the alternative of paying $10 per acre instead of drilling the second well. On making such payment it has the privilege of deferring drilling operations for 12 months. To 'be noticed, however, is the fact that the clause further states that the 12 months’ deferrment is “from said date.”
 

 Now what is meant by the phrase “from said date”? Counsel for plaintiffs direct attention to a preceding provision in the same sentence requiring the drilling operations to be commenced “within 12 months from the date of this lease”, and they suggest that the phrase has reference to the date of the contract. On this point, to quote from their brief, they argue:
 

 
 *1063
 
 “ *• * * The worcis ‘said date’ can ■only be technically, accurately, and substantially interpreted as referring to the ■date of said lease, and the plain meaning is that if the Lessee elected not to drill the second well in the first year Lessee was to pay the $10.00 per acre to fulfill Lessee’s •obligations for that year, and that upon making such payment the lease would thereby be extended for the full first year. The Court must distort the meaning of plain English to arrive at any other conclusion.”
 

 Answering this argument, defense counsel say:
 

 “.In support of the meaning which they .attribute to the words ‘said date’, the plaintiffs rely very heavily on the fact that the word ‘said’ is. used to refer back to something previously stated, and they go back to the four preceding words ‘date of this lease’ as being the point of reference. A glance at the sentence from which these words are taken shows that the plaintiffs have snipped them off at the point most .advantageous to them, and that the entire phrase reads ‘within 12 months from the ■date of this lease’. When this entire phrase is considered, rather than picking the last four words out of context, it is clear that the words ‘said date’ are meant to refer to the dat-e at the end of ‘12 months from the ■date of this lease’.
 

 '"Another consideration reveals clearly the unsoundness of plaintiffs’ grammatical juggling. The phrase states that the $10.00 per acre covers ‘the privilege of deferring commencement, etc.’’ It does not say shall cover ‘the privilege of having deferred commencement’. The word ‘defer’, in its ordinary and usual meaning, always relates to future contemplation, and could not be twisted into a past reference, as plaintiffs are attempting to do, without giving it meaning which it has never known in the English language. It must be remembered that after the first well turned out to be a dry hole, the lessee had up until the very last day of the first year of the lease in which he could either begin drilling the second well or assume its obligation to pay the $10.00 per acre renewal rental. There can be no dispute that it did not have to make its choice as to which alternative it chose until this very last day. Since that is the undeniable result of this provision of the lease, for the plaintiffs to say that the $10.00 per acre payment covered the privilege of ‘deferring’ drilling operations for the year which had already passed (including as we have seen three months which had no relation to the obligations surrounding a second well) is to create new meaning for an otherwise commonly understood word (‘deferring’) and to reach an absurd conclusion, which the plaintiffs admit should be avoided in contract interpretation.”
 

 In further support of their position herein, 'which is that the disputed provision merely stipulated for the payment of delay rentals on failure to drill, counsel for defendant call attention to the'next'succeed
 
 *1065
 
 ing, or the last, sentence of paragraph 4 reading: “In like manner and upon like payments during the primary term, the ■commencement of such operations may be further deferred for like period for the ■same number of months successively.” And, as to it, they say that the word “like”, which is used three times, clearly refers to the previous sentence as containing a similar condition, and that since the succeeding sentence admittedly is a rental provision it follows that the previous sentence also contains a provision of the same character. Additionally, counsel show that immediately following the typewritten paragraph 4, on the printed portion of the contract, the lease provides : “Such rental payments may be made to the Lessor by Lessee paying or tendering the same to Lessor, or depositing or tendering for deposit to the credit of Lessor in the Fidelity National Bank at Baton Rouge, La., * * *.”
 

 Adverting again to the brief of plaintiffs’ counsel, we find therein the following additional argument:
 

 “There are a number of other reasons why the conclusions of the trial court are unsound. In the first place, the initial $12,-000.00 payment was the consideration paid by Lessee for the privilege of drilling a well within ninety days from February 17, 1944. If this well was not drilled within that time, then by the express language of the lease it was to terminate automatically. For the remaining nine months of the first year, the Lessee was required to either drill a second well or to pay $10.00 per acre and this was true whether the first well was a producer or a non-producer.
 

 “If what the Lessee contends for here is correct, there is no consideration whatever for the remaining nine months of the lease, for here Lessee is contending that when he paid the $10.00 on February 16, 1945, that he was paying the rental for the second year.' What this argument would sustain is that the consideration for one year was the same as the consideration for two years.
 
 %
 
 * iji
 
 Si
 

 We do not understand that the lessee’s initial payment (often called a bonus) of $12,000 was merely for the privilege of drilling a well within 90 days from February 17, 1944. In consideration of that sum and of certain stipulated covenants, conditions and obligations the lessee, according to the contract, received a lease for three years (the primary term) and so long thereafter as oil, gas or other minerals would be produced. Among such conditions was the commencement of drilling operations within the mentioned 90 day period, and with this condition the lessee complied. Clearly this compliance, along' with the bonus payment, constituted a serious and an adequate consideration for 'the lease’s existence during the remaining nine months of the first year.
 

 Had not the above referred to phrase “from said 'date” been inserted in paragraph 4, no difficulty would be experienced iri d'etérmin'ittg"thé""meanirig of the
 
 *1067
 
 $10 per acre payment clause. Without that phrase the remainder of the clause, when considered with the other lease provisions, could only be construed as relating to the payment of delay rentals. However, by the use of that phrase, particularly since preceding it in the same sentence reference was made to “date of this lease”, the clause was rendered ambiguous. And because of the ambiguity the trial judge was warranted in permitting the introduction of extrinsic evidence as an aid in determining the intention of the. parties. Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363; Krauss et al. v. Fry et al., 209 La. 250, 24 So.2d 464.
 

 From such evidence we find that the typewritten paragraph 4 was prepared in the law offices of Mr. J. Blanc Monroe, who represented the Denkmann Lumber Company.’ Participating in the preparation, in addition to Mr. Monroe, were Mr. Cashio (one of plaintiffs’ attorneys), the plaintiffs herein, and three representatives of the named lumber company, the original lessee. All joined in making suggestions as to its contents, and the completed form was agreed to only after much revision and rewriting.
 

 Mr. Monroe and the three representatives of the original lessee testified emphatically that the parties intended the disputed $10 per acre payment clause to relate merely to delay rentals to keep the lease in full force and effect for the second year, and that the phrase “from said date” meant a date one year after the contract’s execution.
 

 To the contrary Messrs. Angelloz and Cashio, in their testimony, were equally as emphatic that such clause had reference to-a payment to be made during the first year in lieu of drilling a second well, and that additional delay rentals were provided for in the next succeeding sentence. Further,, these witnesses testified that irrespective of whether the first well resulted in a producer or a dry hole the lessee, under the-agreement, was required to make that in. lieu payment, the terms and conditions being the same in either case. They failed to satisfactorily explain, however, why it. was necessary in paragraph 4, if the terms, and conditions were the same, to have two-separate provisions containing different phraseology and different amounts. A. single provision covering the asserted identical obligations, it seems, would have-sufficed.
 

 In addition to the last discussed testimony-plaintiffs introduced a letter written by Mr. Dewey D. Angelloz, on the day preceding, the execution of the lease, which cets forth the agreement of the parties. It reads:
 

 “February 16, 1944
 

 “Denkmann Lumber Company “Canton, Mississippi
 

 “Gentlemen:
 

 “Confirming our verbal understanding of this date relative to you leasing our Clover Ridge Plantation in Section 39, 40, 72 and' 110 Township 7 South, Range 10 East,,
 
 *1069
 
 Iberville Parish, Louisiana. It is agreed by and between us as follows: That we agree to execute to you a three year oil, gas 'and mineral lease on the above described land for the following consideration: $12,000.00 to be paid upon the signing of said lease and evidence of title, and a 1/32 overriding royalty of the 8/8 and the commencement of the drilling of a well within ninety days from the signing of said lease.
 

 “It is further understood and agreed that in the event said well to be drilled is a commercial producer, either oil or gas, that you will agree to begin the drilling of the second well at some location on this lease within twelve months from the date of said lease or pay to us the sum of $12,-000.00 cash in lieu of drilling the second well.
 

 “Should this payment be made to us instead of drilling the second well within the twelve mqnths period, this lease shall be in full force and effect so long as oil, gas and other minerals are produced therefrom in paying quantities.
 

 “In the event that this well is a dry hole then a second well should be started within twelve months from the date of lease or a rental payment of ten dollars per acre to us and such like amounts in lieu of drilling during the primary term of this lease.
 

 “The above terms should be accepted by you not later than Friday, the 18th day of February, 1944.
 

 “Yours very truly,
 

 “(Signed) D. D. Angelloz”
 

 Rather than support the contention of plaintiffs herein, this letter, with special reference to the next to the last paragraph thereof, appears to sustain the position of defendant. It specifically refers to the $10 per acre payment as rental.
 

 After thoroughly analyzing the provisions of the lease in question and carefully studying the extrinsic evidence, which was properly admitted for the purpose of aiding in determining the intention of the parties to the ambiguous contract, we are unable to conclude that the district judge erred in ruling in fayor of the defendant.
 

 For the reasons assigned the judgment is affirmed.
 

 O’NIELL, C. J., takes no part.