REID, Judge.
Tulane Hardwood Lumber Co., Inc., brought suit against Airline Builders Service, Inc. (formerly Highland Park Lumber Co., Inc.) and Lester J. Jones, on a promissory note dated July 1, 1957 in the original amount of $8,352.71, with a balance due of $2,161.57, plus interest, attorney’s fees, and all costs of suit. The note was signed on behalf of the corporation by Lester J. Jones and was endorsed by Lester J. Jones, individually. An allegation of further indebtedness of $530.43 on an open account was subsequently abandoned when it was shown that the defendant corporation was adjudged a bankrupt.
*106 Lester J. Jones answered plaintiff’s petition denying liability, filed a third party petition against Troy W. Ball, Harold Most-koff, AÍlen S. Jackson, Richard H. Waller, and Oscar A. Sams, alleging he had sold all of his stock in Highland Park Lumber Co., Inc., to the third party defendants for $18,225.00 resulting in their assumption of his personal liability on the note, as well as other indebtedness of the corporation and Lester J. Jones.
Lester J. Jones subsequently amended his pleadings alleging he had entered into an option agreement with the five third party defendants on March 31, 1958 whereby he was relieved of all liability on the note sued upon and a further note made payable to the Capital Bank and Trust Company. He further alleged the option was exercised by letter of April 14, 1958, and on April 18, 1958, the stock of the corporation was transferred to the third party defendants by notarial act signed by third 'party plaintiff and his wife for the recited consideration of the release of Lester J. Jones from all liability under the note sued upon. He further alleged the third party defendants subsequently took possession of the corporation, operated it, and represented themselves as the sole stockholders thereof.
On February 26, 1962, judgment was signed in favor of third party defendant Oscar A. Sams granting him a stay of proceedings until such time as his ability to defend would no longer be hampered by military service.
The third party defendants entered a general denial, pleading the obligation sued upon was not a promissory note given for valuable consideration; the indebtedness had been paid in full; and, in the alternative should the Court find the note unpaid that their agreement to assume liability is subject to compensation and set-off because the company owed debts unknown to them. The third party defendants subsequently filed an amended answer alleging any language appearing in any of the instruments purporting to impose any personal obligation on the part of the third party defendants to assume the obligation of discharging the promissory note used upon did not evince the intention of the parties and constituted error on the part of the draftsman in his confection of the instruments, and the commission of error was first evident to third party defendants upon receipt of Lester Jones’ pleadings.
For written reasons judgment was entered in favor of plaintiff, Tulane Hardwood Lumber Co., Inc., and against the defendant, Lester J. Jones, for the balance due on the note, dismissing defendants’ third party action.
Lester J. Jones applied for a new trial, which was denied for written reasons assigned, and Jones then appealed to this Court.
The two major issues raised in this case are (1) whether the third party defendants had assumed the personal liability of Jones when they purchased the stock of the Highland Park Lumber Co., Inc. and (2) the issue of imputation of certain payments to the plaintiff by Highland Park Lumber Company, Inc., and its successor, Airline Builders Service, Inc.
The record shows that Lester J. Jones had been operating Highland Park Lumber Co., Inc., since 1957. On February 28, 1958 a financial statement of the corporation showed assets of approximately $81,781.77 and liabilities of approximately $107.352.45. Jones contemplated placing the corporation in bankruptcy, but, because of his personal liability on two notes, the one sued on herein which had a balance of approximately $5000.00 at the time and another one to the Capital Bank and Trust Company in the amount of $10,000.00 he sought instead to sell the corporation. The third party defendants, who were interested in purchasing the business but who did not want to purchase until they had examined the books of the corporation to see whether it could be rejuvenated, entered into a purported option to purchase on March 31, 1958, prepared by Joseph F. Keogh, an attorney. On April *107 14, 1958, four of the named third party defendants accepted the option subject to certain condition which Jones apparently met. On April 18, 1958, Jones and his wife appeared before Joseph F. Keogh and executed a notarial act purporting to transfer the stock of the corporation to the third party defendants. But when the third party defendants went to the Capital Bank and Trust Company with the papers prepared by Mr. Keogh, the President of the Bank said the Bank was holding the stock of the corporation and he did not feel the papers were satisfactory. ., They consulted Mr. Jules Landry, attorney for the Bank, who informed them the papers were not satisfactory and they could not buy the stock directly. He proceeded to prepare what he considered to be the necessary papers. Mr. Landry apparently prepared minutes of a stockholders’ meeting. Those minutes were not included in the record but Mr. Keogh testified he had a duplicate copy and, according to the minutes Mr. Jones and his wife would first transfer the 5400 shares of outstanding stock in the name of Lester J. Jones to the corporation at a price not to exceed the par value of the stock and then new stock would be issued to the five new owners. The record shows that 3800 shares of stock were issued to the five new owners or their wives. The certificates were signed by Lester J. Jones as President and by his wife as Secretary. There followed an election of new officers consisting of the five named third party defendants. Rather than permit the new owners to endorse the old note mentioned in the option, the Bank prepared a new note for $6,000.00 plus interest, signed by the corporation and endorsed by the new owners. The Bank also required the new owners to sign stock transfer forms and pledge the stock to the Bank as security for the indebtedness to the Bank. It is thus clear that the procedure followed for the transfer of the stock of the corporation was that required by the Bank.
The third party defendants did not execute the act of transfer but when stock certificates were issued to them, they executed stock transfer papers.
This case turns upon an interpretation of the three agreements and the facts surrounding the stock transfer, as well as the actions of the third party defendants thereafter.
The option to purchase reads as follows:
“OPTION TO PURCHASE
“BE IT KNOWN, That on this 31st day of March, 1958,
“BEFORE ME, Joseph F. Keogh, Notary Public, duly commissioned and qualified in and for the Parish of East Baton Rouge, State of Louisiana, therein residing and in the presence of the witnesses hereinafter named and undersigned :
“PERSONALLY CAME AND APPEARED: Lester J. Jones who declared that for and in consideration of the price and sum of One and No/100 ($1.00) Dollar cash and other good and valuable consideration including the release of appearer Lester J. Jones from all liability on: (a) that certain promissory note made and endorsed» by ap-pearer Lester J. Jones payable to the Capital Bank and Trust Company and (b) that certain promissory note made and subscribed by appearer Lester J. Jones payable to the order of Tulane Hardwood Company, receipt of which is hereby acknowledged, he grants unto Harold Mostkoff, Allen S. Jackson, Troy W. Ball, Richard H. Waller, and Oscar A. Sams for a period of fifteen (15) days from this date, and subject to the conditions hereinafter set forth, the exclusive right, privilege, or option to purchase for the price and sum of Eighteen Thousand Two Plundred Twenty-five and no/100 (18,225.00) Dollars cash, which said amount is to be applied against the outstanding indebtedness of the said Lester J. Jones and *108 Highland Park Lumber Company, Inc., the following described property:
“1. All of the outstanding shares of stock in that certain corporation known as Highland Park Lumber Company, Inc., Baton Rouge, Louisiana, now owned by appearer, Lester J. Jones.
“2. All assets, movable and immovable property, accounts receivable, good will, being now owned by said corporation, Highland Park Lumber Company, Inc.
In the event Harold Mostkoff, Allen S. Jackson, Troy W. Ball, Richard H. Waller, and Oscar A. Sams desire to exercise the option herein granted, they shall send a registered letter to Lester J. Jones addressed to the latter at 9095 Wynnword Drive, Baton Rouge, Louisiana. In such event the act of sale of the hereinabove described property shall be passed before Joseph F. Keogh within fifteen (15) days of the date of the posting of said registered letter. If the act of sale is actually passed within said period, the sum of One and No/100 ($1.00) Dollars shall be applied on the total purchase price of Eighteen Thousand Two Hundred Twenty-Five and No/100 ($18,225.00) Dollars and the balance thereof shall be paid in cash into that certain business known as Highland Park Lumber Company, Inc., in Liquidation of outstanding indebtedness of the said corporation.
“It is further understood and agreed that time is of the essence of this contract and that all rights of the said Harold Mostkoff, Allen S. Jackson, Troy W. Ball, Richard PI. Waller, and Oscar A. Sams hereunder shall cease and terminate if not exercised within fifteen days (15) from this date.
“THUS DONE AND PASSED in my office in the City of Baton Rouge, State of Louisiana, in the presence of the undersigned competent witnesses and before me, Notary on the 31st of March, 1958.
“/s/ Lester J. Jones Lester J. Jones
“WITNESSES:
/s/ Harold Mostkoff
Harold Mostkoff /s/ Tañe L. Weiner
/s/ Allen S. Tackon Allen S. Jackson
/s/ Bonnie B. East
/s/ Troy W. Ball Troy W. Ball
/s/ Richard H. Waller Richard H. Waller
/s/ Oscar A. Sams Oscar A. Sams
“/s/ Tosenh F. Keogh NOTARY PUBLIC”
The conditional letter of acceptance, dated April 14, 1958 reads as follows:
“Mr. Lester J. Jones 9095 Wynnwood Baton Rouge, Louisiana
Dear Sir:
We the undersigned hereby accept and exercise the option to purchase granted to us by you by act dated March 31, 1958 subject to the following conditions being fulfilled by you prior to our exercising the said option and passing the said sale:
1. The bank loan at the Capital Bank and Trust Company must be reduced from $10,000.00 to $6,000.00.
2. All of the debts for materials and labor on Highland Park Lumber Company’s Accounts Payable list on the three houses in Sunny-broolc Subdivision must be liquidated.
3. Highland Park Lumber Company, Inc. must be clear on the lease agreement with Southern *109 Fleet Leasing Company on the lease agreement covering three vehicles.
Your very truly,
/s/ Troy W. Ball Tr. /s/ Oscar A. Sams /s/ Harold Mostkoff /s/ Allen S. Tackson”
The act of transfer to the third party defendants individually, executed by Lester J. Jones and his wife, covering 5400 shares, all the outstanding stock issued by the corporation to Lester J. Jones, contained the following language:
“Appearers further deposed and said that the stock sold herein has been sold for the valuable consideration of appearer, Lester J. Jones, being released by the said purchasers from all liability on: A. The balance due on that certain promissory note made and endorsed by said Lester J. Jones, payable to the Capital Bank & Turst Company of Baton Rouge, Louisiana, and B. The balance due on that promissory note made and subscribed by appearer, Lester J. Jones, payable to Tulane Liard wood Company, B. R., La.”
At the trial, the defendant Jones objected to the introduction of any parol evidence to construe the intention of the parties. The Trial Judge permitted the introduction of this evidence, and correctly so. He stated:
“ * * * The first duty of a court in interpreting an agreement is to ascertain the intention of the parties, and where the instrument is inartificially drawn and contains obscure or ambiguous language, parol evidence is admissible to prove the intentions of the parties. See Krauss, et al vs. Fry, et al, 209 La. 250, 24 So.2d 464 (1946); Angelloz vs. Southeastern [Southwestern] Oil and Refining Company, 215 La. 1056, 42 So.2d 753 (1949); Rudman vs. Dupuis, 206 La. 1061, 20 So.2d 363 (1944); Vaughan vs. P. J. McInerney and Company, 12 So.2d 516 (La.App.1943).”
The Trial Court held the option itself did not impose any liability upon the third party defendants to assume the personal obligations of Jones, as argued by said defendant. He stated such a contention would mean the third party defendants were assuming some $15,000.00 in debts for the privilege of being provided 15 days to examine the financial condition of a known, insolvent corporation. The Trial Judge pointed out that the attorney who prepared the instrument emphatically testified that, if the option was not exercised, the parties would not be bound. The Court then found that the documents did not impose any personal obligation on the third party defendants, but only imposed liability upon the corporate body. It was his opinion that it was the intention of the parties that, as soon as the stock was transferred to the third party defendants, the $18,225.00 paid to the corporation was to be used to pay the two notes in question and other debts, automatically releasing Jones from any liability imposed by his endorsing the two notes. The Trial Judge felt that to say Jones did not receive any consideration for the transfer of the stock was to ignore the facts that the corporation was insolvent and that Jones was burdened with $15,000.00 personal endorsements and, with the addition of the $18,-225.00 into the corporation, Jones hoped to see the notes paid off by the corporation and be relieved of personal liability.
While it is true, as pointed out by the Trial Judge, that the documents in question are ambiguous, and the option itself did not bind the third party defendants personally, nevertheless we cannot agree with the Trial Court that the documents, when construed together, imposed liability only on the corporate body.
The issue of the intention of the parties is before this Court by virtue of an answer filed by the third party defendants in which they state that insofar as any lan *110 guage in any of the instruments may be construed to impose any personal obligation upon them to discharge the personal note sued upon, such language was not the intention of the parties, particularly the third party defendants, and constituted error which they affirmatively plead. They further contend that if such language was inserted it was through error on the part of the draftsman and knowledge of this error and mistake became known to them only after they received and considered copies of third party plaintiff’s supplemental answer and third party petition in March of 1960. This being an affirmative defense, the burden of proof in this regard lies with the third party defendants.
The record is clear that the three instruments quoted above were prepared by the third party defendants’ attorney. The attorney testified he received his fee from the third party defendants. The testimony of Mr. Jackson as President of the corporation, of Mr. Mostkoff as secretary of the corporation, and the other third party defendants, is emphatic that they considered Mr. Keogh their attorney and he was acting on their behalf and they relied upon him to include language in the agreement which expressed their intention. There is no evidence in the record which would indicate that Mr. Jones had any part in determining who should prepare the document necessary to carry out the transfer. Mr. Keogh testified he prepared the option at the direction of all of the people involved and, to the best of his ability, the instrument contained the intentions of the parties. He either read or had the parties read a copy of the option and he was sure they knew its contents. It was brought out on cross examination that none of the third party defendants had objected to any of the language contained in the option. Mr. Keogh emphatically stated that if the option had not been exercised there would have been no obligation on the part of the third party defendants to assume any liability, and their only loss would have been the $1.00 consideration set forth in the opinion. We cannot agree with the Trial Judge’s opinion that the testimony of the attorney showed that it was his impression the third party defendants were not to personally assume any obligation. We believe the general tenor of Mr. Keogh’s testimony indicates the personal obligations of Mr. Jones were to be assumed. When asked whether or not the money paid for the stock was to be paid into the corporation, he testified “It was my understanding that that is what was to have been done to liquidate the obligations of either the corporation or Mr. Jones and I am not certain which * * * however, it is also my impression that if the option were exercised the liability of the corporation or Mr. Jones or both would be assumed by the prospective purchasers.” On questioning by the Court Mr. Keogh said:
“Q : Is it your appreciation and understanding of that option that all it is, is an option for these five gentlemen to purchase Mr. Jones’ stock for a given price?
“A: Yes sir, and the price is as we have been testifying about here for an hour and a half.
“Q: And the assumption of those notes, among other things? \
“A: Yes sir. No actual cash ever transferred hands, except that $1.00, and I frankly don’t recall who gave that to Mr. Jones.
“Q: And had they seen fit not to have exercised that option, then the whole thing would have ended, and that would have been the end of it?
“A: That’s correct. Mr. Jones, I might point out — of course, I think the Court is aware of this —had certain obligations also, as we pointed out in this April 14, 1958 letter.
“Q: All of this has nothing to do with Mr. Jones’ personal obligations, option or otherwise?
*111 "A: I am not .sure I follow you, Judge. When you say ‘all of this’ you mean the option to purchase ?
4,Q : The transaction with the corporation?
■“A: Oh, no sir.
4<Q : That’s separate and distinct from his personal obligations, if he had any?
"“A: Assuming you speak of personal obligations, other than what he may or may not have been accountable to the Capital Bank & Turst Co. for and the Tulane Hardwood. As I say, I never did see those notes, and I don’t know whether he signed them individually or as president of the corporation.”
In regard to the argument of the third party defendants that they had merely purchased the stock and were liable only for the corporation debts, Mr. Keogh testified he informed the third party defendants they were not stockholders, they had to purchase the stock as individuals, and the agreement they entered into were as individuals. There is no question Mr. Keogh was aware that the personal obligation on the two notes in question was to be assumed by the individuals because he put this condition in the option to purchase as well as the agreement of April 18.
The actual language contained in the ■option is ambiguous and indefinite, but this should not destroy the actual intent, that is, an obligation by third party defendants to assume the payment of the note.
Mr. Jones’ prime purpose in entering the transaction was to be relieved of his obligations. It is difficult to believe, as stated by the Trial Court, that Mr. Jones simply hoped to benefit by the infusion of new money into the corporation in the hope that this money would be used to pay off the corporate debts, including those on which he was personally liable. Mr. Jones was the owner of all the stock of an insolvent corporation considering bankruptcy. He did not wish to enter bankruptcy however, because of the personal obligations he had incurred by endorsing two corporate notes. With this in mind, he entered into an agreement whereby, for $1.00 he would transfer all his stock in the corporation in the hope of being released from his personal obligations. Both instruments which he signed, and which were drafted by the attorney for the other parties, contained language indicating that he wished to be relieved of his personal obligations. When it became necessary for him to raise $4,000.00 to reduce one of the notes in order to have the transfer completed, he secured this $4,000.00 with some difficulty in order to accomplish this purpose. Yet, the third party defendants would have the Court believe this was done merely in the hope that some of the money infused into the corporation would be used to pay those corporate debts upon which he was personally liable.
The inclusion of the clause concerning the assumption of personal liability, placed in both of the agreements prepared by Mr. Keogh, could only have been put there for Mr. Jones’ protection. If it were not intended that the third party defendants would personally assume Mr. Jones’ obligations, there would have been no need for such a clause because it would follow that the corporation would be liable for the corporate debts no matter who the owners were and any money put into the corporation would, by the very nature of things, be subject to the debts of the corporation.
The Trial Court overlooked the circumstances surrounding the actual transfer of the stock of said corporation. The manner and form of the transfer was altered due to the refusal of the Capital Bank and Trust Company, which held all of the outstanding stock of the corporation in pledge, to approve the transfer plan as drawn up by Mr. Keogh. Lester Jones and his wife signed an act of sale, prepared by Mr. Keogh, con *112 veying the stock to the third party defendants for the consideration of the assumption of the two notes mentioned by third party defendants. It can be assumed an actual transfer of the stock certificates was contemplated. When the third party defendants went to the Bank they were instructed by the Bank’s attorney, for reasons the Court does not understand,. that they could not buy the stock directly. The attorney then proceeded to prepare the papers in order that the transfer could be accomplished as set forth herein. But, it should be emphasized the transfer, as originally envisioned and as drawn by third party defendants’ attorney, is reflected by the instrument of April 18, 1958, containing an assumption of peronal liability. Upon the trial of the case all the third party defendants denied having seen the instrument or having any knowledge of its existence. This Court cannot believe that Mr. Keogh would have drawn this instrument without the knowledge and consent of the parties. It must be assumed that, had the Bank failed to object to the form of transaction the transfer would have been made in compliance with the agreement of April 18, 1958.
In addition, we note the second agreement of April 18, 1958 signed by third party defendants conforms to the option insofar as the assumption of liability is concerned. Despite their alleged claims of protest that it was not their intention to personally assume any liability third party defendants signed the new note, releasing Jones from his indebtedness, and made no attempt to avoid the agreement when required of them by the Bank.
Mr. Charles S. Williamson, III, the only party present at the time of the signing of the option who was not directly involved in the transaction testified that it was his understanding that after Mr. Jones had reduced the Capital Bank and Trust Company note by $4,000.00 he was “supposed to get out of there scott free.” The only interpretation to be gained from this evidence is Mr. Jones intended to be released from all personal liability.
It is, therefore, the opinion of this Court that the third party defendants obligated themselves to assume the liability of the note sued upon herein when they purchased the stock from the defendant Mr. Jones.
An additional question raised in this appeal is the question of the imputation of payments, raised by third party defendants in their original answer and by the defendant Jones in his motion for new trial. The Trial Judge, in his written reasons in connection with his refusal to grant a new trial, refused to attribute payments made by the third party defendants to the note and sustained the plaintiff’s position that these payments were correctly applied to its open account. Defendant Lester Jones, in his appeal, specifically states in his brief that the only matter from which he is appealing and the only error complained of is refusal of the Trial Court to sustain his third party demand, abandoning any claim which he might have in connection with imputation. The third party defendants did not enter an appeal to that part of the Trial Court’s judgment overruling their request for imputation nor did they file an answer to the appeal. Apropos Article 2133 of the LSA-Code of Civil Procedure reads as follows :
“An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record, whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in nis answer.”
*113 The jurisprudence of this State is settled that this Court cannot alter or amend the judgment in favor of appellee. In Williams v. Langston, 138 So.2d 691, wherein the plaintiff, who was awarded a money-judgment, filed an appeal to increase the award and the defendant neither appealed nor answered the appeal, the Fourth Circuit, Court of Appeal, said:
“Defendant has neither appealed nor answered the appeal, and though he prays in his brief that the judgment of the District Court be reversed, we are powerless to alter or amend the judgment in his favor. See Succession of Babin, 213 La. 950, 35 So.2d 864; Blasingame v. Anderson, 236 La. 505, 108 So.2d 105; Rader v. Rader, La.App., 126 So.2d 189; Vogt v. Del Mar Homes, Inc., La.App., 131 So.2d 926; C.P. Articles 592, 888, 889; see also LSA-C.C.P. Art. 2133.”
In the third party petition the defendant and third party plaintiff prayed for a judgment in his favor and against the third party defendants for the same judgment that might be rendered against him on the principal demand. As this issue was not passed upon by the Trial Court, but is only raised by the third party plaintiff and the third party defendants on this appeal in their briefs, the fact that the third party defendants did not appeal or file an answer to the appeal would not preclude them from raising this issue herein.
The third party defendants maintain that should any liability be imposed upon them that that liability should not he in solido but should only he joint and therefore each party would he held to bound himself only for his proportionate share.
Articles 2080, 2082, and 2093, LSA-C.C. which are pertinent to this issue, read as follows:
Art. 2080.
“When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors.”
Art. 2082.
“When several persons obligate themselves to the obligee by the terms in solido, or use any other expressions, which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors.”
Art. 2093.
“An obligation in solido is not presumed; it must be expressly stipulated.
“This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law.”
The instrument in question did not have any expressed stipulation of in solido liability and, as the facts herein fit within Article 2080, supra, it is the opinion of this Court that the obligation of the third party defendants is joint and not in solido and, therefore, under LSA-C.C. Art. 2086 judgment should he rendered against each defendant separately for his portion of the obligation. This judgment is subject, however, to the stay of these proceedings insofar as Oscar Sams is concerned for the duration of his military service, reserving to the defendant Jones the right to proceed against Sams for his proportion of the share of his obligation upon termination of his military service.
For the foregoing reasons, it is ordered that the judgment of the Lower Court be affirmed against defendant Lester J. Jones; it is ordered, adjudged and decreed that the judgment of the Lower Court in favor of the third party defendants, rejecting the demand of the defendant and third party plaintiff, Lester J. Jones, against them, be reversed and it is now ordered, adjudged and decreed that the said Lester J. Jones, third party plaintiff, have and recover judg *114 ment in his favor and against the said third party defendants Troy W. Ball, Harold Mostkoff, Allen S. Jackson, Richard H. Waller, jointly, for the amount of the judgment rendered against, said Jones.on the principal demand and reserving to him the right to proceed against the third party defendant Oscar Sams upon the termination of his military service.
It is further ordered that the defendant, Lester J. Jones, be cast for all costs and he in turn have judgment against the third party defendants jointly for the costs which he pays herein.
Affirmed in part, reversed in part and rendered.