UNITED STATES of America

v.

**926.787 ACRES OF LAND, MORE OR LESS, IN IBERIA PARISH, STATE OF LOUISIANA, and George Viator et al.**

Civ. A. No. 6306, Division "C".

United States District Court
E. D. Louisiana,
New Orleans Division.

March 19, 1964.

Norton L. Wisdom, Special Asst. to the U. S. Atty., U. S. Dept. of Justice, Eastern District of Louisiana, New Orleans, La., for plaintiff.

William O. Bonin, Landry, Watkins, Cousin & Bonin, New Iberia, La., for defendants.

WEST, District Judge.

This suit, which is now before the Court on petitioner's motion for summary

judgment, involves a condemnation proceeding instituted by the United States of America on December 6, 1956, against 926.787 acres of land in Iberia Parish, Louisiana, and the persons, firms, and corporations known to petitioner who may have, or may claim to have, an interest in that property.

Prior to March 28, 1942, the Parish of Iberia, Louisiana, was desirous of establishing an airport therein to be known as the Iberia Parish Airport. In furtherance of this program, 926.787 acres of land were acquired by the Parish, through its governing authority, the Police Jury, between March 28, 1942, and June 10, 1942. This land was made up of twenty separate parcels or tracts of land, which together formed one contiguous tract. Between those dates, and by twenty-three separate acts of cash sale, this property was conveyed from the various owners to the Iberia Parish Police Jury, who, through its authorized representative, appeared "accepting and purchasing for itself and its successors and assigns." Each of these twenty-three sales contained the following provision:

"It is understood and agreed that in the event the property hereinabove conveyed is no longer used as an airport, or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of the said property, the present vendors shall have the privilege and option of purchasing the said property within ninety (90) days after the Police Jury gives public notice of intention to sell the same for the same basic price per acre paid by present purchaser."

Also, on April 9, 1942, the Iberia Parish Police Jury passed the following resolution:

"BE IT RESOLVED by the Police Jury of Iberia Parish, Louisiana, that in the event the property acquired for the proposed airport by the Police Jury of Iberia Parish is no longer used as an airport or for any public purpose whatsoever, and

the Iberia Parish Police Jury desires to dispose of said property, the vendors of said land shall have the privilege and option of purchasing their respective property within ninety (90) days after the Police Jury gives public notice of intention to sell the said property for the same basic price per acre paid by the said Iberia Parish Police Jury, and that any resolutions or ordinances contrary to or in conflict herewith are hereby repealed."

After the property was acquired by the Police Jury, the Iberia Parish Airport was established and put into use. Some ten or twelve years thereafter, the United States Government was desirous of establishing a naval auxiliary air station, to be used primarily as a jet aircraft training base in the vicinity of Iberia, Louisiana, and the Police Jury of Iberia Parish, Louisiana, apparently being interested in having the facility located in their area, passed the following resolution on October 14, 1954, which was recorded in the Iberia Parish Police Jury Minute Book No. 10, Folio 223:

"It was moved by Mr. Leonard S. Smith, seconded by Mr. O. L. Farmer, and unanimously adopted, that the President of the Iberia Parish Police Jury be and he is hereby authorized and directed to offer the facilities of the Iberia Parish Airport to the U. S. Navy for the establishment of a permanent Jet Training Base, subject to approval of CAA, and assure the Navy of our desire to cooperate to the fullest extent in obtaining such additional land as is necessary."

Approximately one year later, on December 13, 1955, a formal act of donation was executed whereby the Police Jury for the Parish of Iberia, State of Louisiana, through its authorized representative, donated, gave, granted, transferred and conveyed to the United States of America the entire 926.787 acres herein involved. The donation stated that "This transfer and donation is hereby declared to be made for the use by the United

States of America of the land for purposes consonant with the aforesaid statute." The statute referred to is LSA–Revised Statutes 33:4623 (1950), pursuant to which this donation was made, and which statute provides:

"Municipalities and parishes may lease or donate to the United States any property which they acquire, for use as airports, flying or landing fields, or parks, or for use for military purposes, or as civilian conservation corps camp sites."

The act of donation further provided that the United States of America could immediately enter upon and occupy the land donated, but that if the donation was not formally accepted by the United States of America prior to October 1, 1956, the donation and all privileges thereby granted to the United States of America would be null and void. On September 26, 1956, the United States of America formally accepted the donation, which acceptance was duly placed of record in the Conveyance Records of that Parish.

Specifically excluded from the donation, and reserved unto the Police Jury of the Parish of Iberia, was "all oil and gas and other hydrocarbons contained in said lands, provided, however, that the Police Jury, Parish of Iberia, shall have the right to enter upon the lands for the purpose of exploring for, drilling for, and removing oil, gas, and other hydrocarbons, such operations to be conducted only on or from such areas and at such locations as the Commandant, Eighth Naval District, may approve under certain rules and regulations."

After this property was thus acquired by the United States through the act of donation from the Iberia Parish Police Jury, the United States of America, on December 6, 1956, filed this present condemnation suit for the purpose of acquiring fee simple title to the property involved "less and except any right, title and interest acquired by the United States of America under the act of donation from the Police Jury of Iberia Parish, which act of donation is dated December 13, 1955 * * *."." The obvious purpose of filing this condemnation suit was to determine whether or not the Police Jury's predecessors in title had, by virtue of the reservation or option contained in the sales from said vendors to the Policy Jury, acquired any right in and to this property which was not transferred to the United States Government by the act of donation of December 13, 1955. It is now the contention of these prior owners, all of whom are defendants in this suit, that they did have a real right or interest in this property by virtue of what they contend was an option to re-purchase, and they now claim the right to be paid by the United States Government the difference between the price at which they sold the property to the Police Jury and the value of the property at the time it was acquired by the United States of America. Boiled down to its simplest terms, these defendants contend that under the provision contained in the sale by which they sold their property to the Police Jury, they had a right to re-purchase the property at any time the *Police Jury* ceased using the property for a public purpose, *or* at any time the Police Jury decided to *dispose* of the property. They contend that they were never given the opportunity to re-purchase the land and hence they are now entitled to recover the difference between the price at which they sold to the Police Jury, and the value of the land at the time it was acquired by the United States. Petitioner, on the other hand, contends that under the circumstances of this case, no right or option to re-purchase came into being because of the fact that the property involved has, at all times since its acquisition by the Police Jury, and up to the present time, been used "for public purposes". It is petitioner's contention that the condition contained in the sale did not limit the use of the property for public purposes to use by the *Police Jury* for public purposes, but provided, in effect, that the vendors would not have a right to re-purchase so long as the property was used for *"any public purpose whatsoever"*, whether such use

was made of the property by the Police Jury, by the United States Government, or by any other public body. Thus, a determination of this case, insofar as these defendants are concerned, turns entirely upon the interpretation and legal effect of the provision contained in the several acts of sale referring to the vendors' privilege or option to re-purchase the property under certain circumstances.

A contract, legally entered into, has the effect of law upon the parties to it, and, while the Court is bound to give legal effect to it according to the true intent of the parties, still that intent must be determined by the words of the contract itself when these are clear and explicit and lead to no absurd consequence. LSA–Revised Civil Code Art. 1945 (1870); Blevins v. Manufacturers Record Publishing Co., 235 La. 708; 105 So.2d 392 (1958). Unless there is such ambiguity and uncertainty with reference to the written provisions of the contract as to indicate the need for explanation as to the intent of the parties, there is no ground for looking beyond the written words of the agreement. Vaughan v. P. J. McInerney & Co., 12 So.2d 516 (La.App. 2d Cir. 1943).

In order to interpret the disputed provision as defendants would have the Court interpret it, it would be necessary to write into the provision something which is not there. While to interpret it as contended for by petitioner, no alteration of any kind need be made. The Court is of the opinion that this provision is clear and unambiguous, and that nothing has transpired which could in any way be construed to give these defendants any claim or interest in or to the property in question. The provision contained in the sale provides that "In the event the property hereinabove conveyed is no longer used as an airport, *or for any public purpose whatsoever, and* the Iberia Parish Police Jury desires to dispose of the said property," the present vendors would have the right or option to re-purchase it within a given time. Thus, it is clear that in order for these vendors to acquire a right to re-purchase,

it is necessary that two things occur. First, it is necessary that the property be no longer used "for any public purpose whatsoever", *and* "the Iberia Parish Police Jury desires to dispose of said property." It will be noted that the two required conditions are stated conjunctively, and not disjunctively. Thus, had the property ceased to be used for a public purpose, but had the Iberia Parish Police Jury desired to retain the property rather than dispose of it, the right to re-purchase reserved to the vendors would never have come into being. Likewise, should the Police Jury desire to dispose of the property in such a manner as to assure its continued use for public purposes, the right reserved by the vendors to re-purchase would not become operative. Such was the case in the present situation. The Iberia Parish Police Jury did decide to dispose of the property, but its disposition of the property was for the purpose of allowing it to continue to be used for a public purpose, i. e., for use as a United States Naval Auxiliary Air Station. Thus, under the present circumstances, no right of re-purchase has accrued to these defendants, and thus, at the time of the acquisition of the property by the United States of America from the Police Jury, and at the time of the filing of the present condemnation suit, defendants were the owners of no right, title or interest of any kind whatsoever in or to this property.

Furthermore, even had it been decided that some right had accrued to these defendants, it might well be that any such right acquired by these defendants had been lost by their inactivity. The terms in the various sales provide that if the option to purchase should accrue to the vendor, that such option would have to be exercised within ninety (90) days after the Police Jury gave *public notice* of its intention to sell the property. Actually, in this instance, the Police Jury did not give public notice of intention to *sell,* because in fact, it never did *sell* the property to anyone. It *donated* the property to the United States Government. But if such activity on be-

half of the Police Jury should be held to constitute an activation of the condition contained in the sale, then it might well be said that when, on October 14, 1954, the Iberia Parish Police Jury placed of record, in Police Jury Minute Book 10, Folio 223, which is a public record, its motion to offer this property to the United States Navy for the establishment of a jet training base, such recordation in the Public Records of Iberia Parish could well be construed as the giving of "public notice of intention" to dispose of the property in question. This notice remained thusly of record for approximately one year before any action was taken by the Police Jury to consummate a donation of this property to the United States of America. During that time, no action was taken by these defendants to assert any right that they now claim to have, and thus it may well be said that their failure to act within ninety (90) days after the filing and recording of this motion and resolution by the Police Jury constituted a relinquishment by them of any option which they might otherwise have had.

Defendants in this action also lay claim to certain mineral rights pertaining to this property. At the time of the sale of these various tracts by defendants to the Iberia Police Jury, no reservation of mineral rights was made. Thus, obviously, in view of the Court's present ruling that defendants have no right, title or interest in or to this property, it is unnecessary to consider the question of whether or not the United States Government acquired mineral rights to the property. Suffice it to say that the Court is satisfied that none of the defendants in this suit have any claim to any mineral rights in this property.

Since the Court concludes that this dispute revolves entirely around the interpretation of the controversial provision in the various acts of sale, and since there is no material issue of fact involved, for the reasons herein set forth, petitioner's motion for summary judgment will be granted, and a decree will be entered accordingly.