411 So.2d 727 (1982)
Mrs. Emma Viator REAUX, et al., Plaintiffs-Appellants,
v.
IBERIA PARISH POLICE JURY, Defendant-Appellee.
No. 8681.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*728 Eugene D. Broussard, Sr., New Iberia, and Voorhies & Labbe, Marc Judice, Lafayette, for plaintiff-appellant.
Ralph K. Lee, Jr., Asst. Dist. Atty., New Iberia, for defendant-appellee.
Before DOMENGEAUX, SWIFT and LABORDE, JJ.
LABORDE, Judge.
This case is on appeal from the trial court's sustaining of defendant's exception of res judicata. Plaintiffs, Mrs. Emma Viator Reaux, Harold Andrew Reaux, and Joseph C. Romero, seek to avail themselves of a "repurchase clause" inserted in the deeds of cash sale executed by their respective ancestors in favor of the defendant, Iberia Parish Police Jury (Parish). Defendant filed an exception of res judicata based on a prior expropriation proceeding filed by the federal government against plaintiffs' ancestors to cure any title questions arising from the reversionary clauses. From a judgment sustaining the exception of res judicata, plaintiffs have appealed.
On appeal, we must determine if the judgment in the federal expropriation suit is res judicata as to the present suit. For the reasons which follow, we hold that it is not and hence, we reverse.
Essentially, the present suit is an action by the heirs of Wilfred Reaux and Joseph Romero to enforce a reversionary clause contained in the conveyances from those owners to the Parish of Iberia in 1942. The reversionary clause provides:
"It is understood and agreed that in the event the property hereinabove conveyed is no longer used as an airport, or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of the said property, the present vendors shall have the privilege and option of purchasing the said property within ninety (90) days after the Police Jury gives public notice of intention to sell the same for the same basic price per acre paid by present purchaser."
A chronological history of the litigation and facts pertaining to the property involved in this lawsuit follows.
Prior to March 28, 1942, the Parish of Iberia, Louisiana, was desirous of establishing an airport in their parish. In furtherance of this program, 926.787 acres of contiguous land were voluntarily purchased by the Parish from the individual landowners. Two of these landowners were plaintiffs' ancestors, namely Joseph Romero who sold two acres to the Parish on March 31, 1942, and Wilfred Reaux who sold fifty acres to the Parish on May 6, 1942. In all, there were twenty-three separate acts of cash sale executed between the landowners and the Parish and all contained the reversionary clause, supra, which granted the former owners an option to repurchase their property at 1942 prices if the property was no longer used for public purposes and the Parish desired to dispose of the property.
In addition to the "repurchase clause" contained in each deed, the Parish also, on April 9, 1942, passed the following resolution:
"BE IT RESOLVED by the Police Jury of Iberia Parish, Louisiana, that in the event the property acquired for the proposed airport by the Police Jury of Iberia Parish is no longer used as an airport or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of said property, the vendors of said land shall have the privilege and option of purchasing their respective property within ninety (90) days after the Police Jury gives public notice of intention to sell the said property for the same basic price per acre paid by the said Iberia Parish Police Jury, and that any resolutions or ordinances contrary to or in conflict herewith are hereby repealed."
*729 After the property was acquired, the airport was established and put into use. On December 13, 1955, the Parish donated the entire 926.787 acres of land to the United States for use as a naval auxiliary air station. On December 6, 1956, the United States filed expropriation proceedings in the United States District Court against the former owners of the property, (including plaintiffs ancestors) to cure any title questions arising from the reversionary clauses. On May 1, 1964, the United States District Court rendered judgment against defendants, including Wilfred Reaux, deceased husband of plaintiff Emma Viator Reaux and father of plaintiff Harold Reaux, decreeing that the defendants had no right, title or interest of any kind whatsoever in or to the property condemned in the proceedings. This case is reported as United States v. 926.787 Acres of Land, Etc., 227 F.Supp. 361 (D.C.1964). This case was affirmed on appeal in Nelson v. United States, 345 F.2d 888 (5 Cir., 1965).
On June 9, 1964, the United States District Court rendered judgment dismissing Joseph Romero, father of plaintiff Joseph C. Romero from the expropriation suit for failure to answer in that any claim Joseph Romero might have asserted would have been on the same ground as that of the other defendants.
On May 6, 1968, the United States conveyed the 926.787 acre tract back to the Parish. The conveyance contained the condition "That no property transferred by this instrument shall be used, leased, sold, salvaged or disposed of by the grantee for other than airport purposes without the written consent of the Federal Aviation Administration..." Since 1968, the property has been maintained and operated by the Parish as Acadiana Regional Airport.
In 1976, the Acadiana Regional Airport Authority developed a master plan for the airport's future growth and development. As part of this plan, the land formerly owned by plaintiffs' ancestors was designated as an industrial area and subdivided into lots for industrial development. The Parish asked the Federal Aviation Administration to release 43.03 acres of the industrial area to sell to private industries. The Federal Aviation Administration released the property April 17, 1979. The property which is the basis of the present suit is a part of the 43.03 acres.
On May 9, 1979, the Parish adopted a resolution to sell lots from the 43.03 acres of land to private industry for $12,500 per acre. On May 31, 1979, published minutes of the Airport Authority reflect the Authority's similar intention to sell the acreage to private industry at the same price.
On July 31 and August 27, 1979, plaintiffs recorded documents indicating their interest to repurchase the property in accordance with the 1942 reversionary clauses.
On September 12, 1979, the Parish adopted a resolution authorizing the president of the police jury to sign respective deeds of sale from the police jury to the plaintiffs at the 1942 price.[1] The president of the police jury did not sign the sale documents.
On December 18, 1979, plaintiffs filed the present suit. Thereafter, on January 9, 1980, the Parish withdrew its previous offers to sell and on May 12, 1981, it rescinded its September 12, 1979, resolution wherein it had agreed to sell property to plaintiffs at the 1942 price.
On appeal, plaintiffs contend that they should not be precluded from litigating their demands in the present suit by principles of res judicata and that the lower court's holding to that effect should be reversed.
In order to maintain an exception of res judicata in a subsequent action, three things must occur. The subsequent action must (1) contain the same parties, (2) be based on the same "cause" and (3) the thing demanded must be the same. LSA-C.C. art. 2286; Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978); Mitchell v. Bertolla, *730 340 So.2d 287 (La.1976). We also note that a final judgment in federal court may form the basis of a plea of res judicata in state court. McCoy v. Tangipahoa Parish School Board, 308 So.2d 382 (La.App. 1st Cir. 1975), writ refused, 310 So.2d 856 (La. 1975).
Louisiana jurisprudence is very clear that res judicata is stricti juris. Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La.1974) and cases cited therein. A final judgment has the authority of res judicata only as to those issues presented in the pleadings and conclusively adjudicated by the court, and where any doubt exists the second suit will be maintained. McNeal v. State Farm Mutual Automobile Ins. Co., 278 So.2d 108 (La. 1973).
With these principles in mind, we return to the facts. We begin with whether the parties are the same. It is not necessary that the parties in the separate lawsuits be the identical persons in each lawsuit. The plaintiffs in the present lawsuit are the widow and/or children of the landowners who sold their property in 1942 to the Parish of Iberia and who were defendants in the expropriation suit filed by the United States of America in the 1950's. The Iberia Parish Police Jury is the successor in title to the same property from the United States of America as a result of the deed of title from the United States of America to the Iberia Parish Police Jury in 1968. Both the Parish and the plaintiffs are the successors of the former landowners, asserting rights derived from the former landowners and as such they are the "same parties" in legal contemplation within the intendment of Article 2286. Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810, 815 (1974).
We next determine whether the causes presented in this action are identical to those presented in the federal expropriation proceeding. In Sliman v. McBee, 311 So.2d 248 (La.1975), the Supreme Court determined the civilian definition of "cause" in the area of res judicata to be "the legal obligation upon which the action is founded." See Mitchell v. Bertolla, 340 So.2d 287 (La.1976) for a full discussion of "cause."
In the federal expropriation proceedings, the district judge, in discussing the re-purchase clause upon which plaintiffs' ancestors' claim was based, stated:
"The Court is of the opinion that this provision is clear and unambiguous, and that nothing has transpired which could in any way be construed to give these defendants any claim or interest in or to the property in question. The provision contained in the sale provides that "In the event the property hereinabove conveyed is no longer used as an airport, or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of the said property," the present vendors would have the right or option to re-purchase it within a given time. Thus, it is clear that in order for these vendors to acquire a right to re-purchase, it is necessary that two things occur. First, it is necessary that the property be no longer used "for any public purpose whatsoever", and "the Iberia Parish Police Jury desires to dispose of said property." It will be noted that the two required conditions are stated conjunctively, and not disjunctively. Thus, had the property ceased to be used for a public purpose, but had the Iberia Parish Police Jury desired to retain the property rather than dispose of it, the right to re-purchase reserved to the vendors would never have come into being. Likewise, should the Police Jury desire to dispose of the property in such a manner as to assure its continued use for public purposes, the right reserved by the vendors to re-purchase would not become operative. Such was the case in the present situation. The Iberia Parish Police Jury did decide to dispose of the property, but its disposition of the property was for the purpose of allowing it to continue to be used for a public purpose, i.e., for use as a United States Naval Auxiliary Air Station."
The Court then went on to conclude:
"Thus, under the present circumstances, no right of re-purchase has accrued to these defendants, and thus, at the time of the acquisition of the property by the *731 United States of America from the Police Jury, and at the time of the filing of the present condemnation suit, defendants were the owners of no right, title or interest of any kind whatsoever in or to this property."
In the present suit, the legal obligation upon which the action is founded has changed. Unlike in the federal proceedings where the right to repurchase had not yet matured, our review of the record convinces us that both conditions were met at the time the present suit was filed. Although both suits were based on the identical repurchase clauses, this court has serious doubts as to whether a previous litigation can be conclusive as to rights not yet possessed by the litigants at that time. Therefore, where any doubt exists, the controlling jurisprudence is clear that plaintiffs are favored, hence the exception of res judicata which the district court sustained, is now overruled. This of course will necessitate a remand to the trial court for further proceedings.
For the above and foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings; The Iberia Parish Police Jury is cast for all costs of this proceeding in the amount of $1,185.40, as provided by law.
REVERSED AND REMANDED.
NOTES
[1] The Reaux heirs were to purchase 10.526 acres at $189.48 per acre for a total of $1,944.57. The Romero heirs were to purchase 2 acres at $1,840.00 per acre for a total of $3,680.00.