454 So.2d 227 (1984)
Mrs. Emma Viator REAUX, Et Al., Plaintiffs-Appellants,
v.
IBERIA PARISH POLICE JURY, Defendant-Appellee.
No. 83-728.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
Writ Denied October 12, 1984.
*228 Eugene D. Broussard, Sr., New Iberia, Voorhies & Labbe, Marc Judice, Lafayette, for plaintiffs-appellants.
Ralph K. Lee, Jr. and Bernard Boudreau, Iberia Parish Dist. Attorney's Office, New Iberia, for defendant-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiffs, Emma Viator Reaux, Harold Andrew Reaux and Joseph C. Romero, instituted suit against defendant, Iberia Parish Police Jury, to enforce certain options to repurchase land. These options were reserved in 1942 by repurchase clauses contained in property deeds executed by plaintiffs' ancestors to defendant. The reversionary clauses provide that the land would be reconveyed to plaintiffs for the nominal consideration of the 1942 sales price, in event defendant desired to sell the property and no longer needed it for any public purpose. The trial court held that plaintiffs' reversionary interests were no longer operable and that a reconveyance to plaintiffs for consideration of the 1942 nominal purchase price would constitute a disguised donation by a political subdivision to individuals in contravention of article 7, section 14 of the Louisiana Constitution. Plaintiffs appeal. We affirm.

FACTS
Plaintiffs, heirs of Wilfred Reaux and Joseph Romero, brought this action to enforce a reversionary clause contained in the conveyances from their ancestors in title to *229 the parish of Iberia in 1942. The reversionary clause provides:
"It is understood and agreed that in the event the property hereinabove conveyed is no longer used as an airport, or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of the said property, the present vendors shall have the privilege and option of purchasing the said property within ninety (90) days after the police jury gives public notice of intention to sell the same for the same basic price per acre paid by present purchaser."
Prior to March 28, 1942, the parish of Iberia, Louisiana, was desirous of establishing an airport in their parish. In furtherance of this program, 926.787 acres of contiguous land were voluntarily purchased by the parish from the individual landowners. Two of these landowners were plaintiffs' ancestors, namely Joseph Romero who sold 2 acres to the parish on March 31, 1942, and Wilfred Reaux who sold 50 acres to the parish on May 6, 1942. In all, there were twenty-three separate acts of cash sale executed between the landowners and the parish and all contained the reversionary clause, supra, which granted the former owners an option to repurchase their property at 1942 prices if the property was no longer used for public purposes and the parish desired to dispose of the property.
In addition to the repurchase clause contained in each deed, the parish also, on April 9, 1942, passed the following resolution:
"BE IT RESOLVED by the Police Jury of Iberia Parish, Louisiana, that in the event the property acquired for the proposed airport by the Police Jury of Iberia Parish is no longer used as an airport or for any public purpose whatsoever, and the Iberia Parish Police Jury desires to dispose of said property, the vendors of said land shall have the privilege and option of purchasing their respective property within ninety (90) days after the police jury gives public notice of intention to sell the said property for the same basic price per acre paid by the said Iberia Parish Police Jury, and that any resolutions or ordinances contrary to or in conflict herewith are hereby repealed."
After the property was acquired, the airport was established and put into use. On December 13, 1955, the parish donated the entire 926.787 acres of land to the United States for use as a naval auxiliary air station. On December 6, 1956, the United States filed expropriation proceedings in the United States District Court against the former owners of the property, (including plaintiffs' ancestors) to cure any title questions arising from the reversionary clauses. On May 1, 1964, the United States District Court rendered judgment against defendants, including Wilfred Reaux, deceased husband of plaintiff Emma Viator Reaux and father of plaintiff Harold Reaux, decreeing that the defendants had no right, title or interest of any kind whatsoever in or to the property condemned in the proceedings. United States v. 926.787 Acres of Land, Etc., 227 F.Supp. 361 (1964), affirmed, Nelson v. United States, 345 F.2d 888 (1965).
On June 9, 1964, the United States District Court rendered judgment dismissing Joseph Romero, father of plaintiff Joseph C. Romero, from the expropriation suit for failure to answer in that any claim Joseph Romero might have asserted would have been on the same ground as that of the other defendants.
On May 6, 1968, the United States conveyed the 926.787 acre tract back to the parish. The conveyance contained the condition "That no property transferred by this instrument shall be used, leased, sold, salvaged or disposed of by the grantee for other than airport purposes without the written consent of the Federal Aviation Administration ..." Since 1968, the property has been maintained and operated by the parish as Acadiana Regional Airport.
In 1976, the Acadiana Regional Airport Authority developed a master plan for the airport's future growth and development. As part of this plan, the land formerly owned by plaintiffs' ancestors was designated as an industrial area and subdivided *230 into lots for industrial development. The parish asked the Federal Aviation Administration to release 43.03 acres of the industrial area to sell to private industries. The Federal Aviation Administration released the property April 17, 1979. The property which is the basis of the present suit is a part of the 43.03 acres.
On May 9, 1979, the parish adopted a resolution to sell lots from the 43.03 acres of land to private industry for $12,500 per acre. On May 31, 1979, published minutes of the Airport Authority reflect the Authority's similar intention to sell the acreage to privateindustry at the same price.
On July 31 and August 27, 1979, plaintiffs recorded documents indicating their interest to repurchase the property in accordance with the 1942 reversionary clauses.
On September 12, 1979, the parish adopted a resolution authorizing the president of the police jury to sign respective deeds of sale from the police jury to the plaintiffs at the 1942 price.[1] The president of the police jury refused to sign the sale documents on advice of the district attorney.
On December 18, 1979, plaintiffs filed the present suit and on January 9, 1980, the parish withdrew its previous offers to sell. On May 13, 1983, the Iberia Parish Police Jury rescinded its September 12, 1979 resolution wherein it had agreed to sell property to plaintiffs at the 1942 price.
An exception of res judicata was filed by the defendant and granted on the basis of the above mentioned federal court judgment. The exception was reversed by the Court of Appeal and the case remanded for trial on the merits. Reaux v. Iberia Parish Police Jury, 411 So.2d 727 (3rd Cir. 1982).
The trial resulted in judgment in favor of defendant. Plaintiffs appeal from this judgment.

ISSUES
The following issues are presented on appeal:
1) Whether the plaintiffs' 1942 reversionary interests and/or option rights remain valid and enforceable in light of the federal condemnation proceedings;
2) Whether the Iberia Parish Police Jury is legally bound to sell the disputed portion of property to plaintiffs in accordance with their resolution of September 12, 1979 to do so; and,
3) Whether the sale of land by the police jury for a nominal price pursuant to an adopted resolution, constitutes a disguised donation from a political subdivision to an individual in contravention of Louisiana Constitution article 7, section 14.

ISSUE # 1: PLAINTIFFS' REVERSIONARY INTERESTS
Plaintiffs contend that they presently maintain a reversionary interest in the disputed property arising out of an option to repurchase it for the nominal consideration recited in the 1942 land sale from plaintiffs' ancestors to defendant. Conversely, defendant argues that the federal condemnation judgment, rendered in 1968, vested full ownership of the property in the United States and totally divested plaintiffs of any and all reversionary rights in the property that may have been reserved to them in 1942.
The record indicates that defendant donated the subject property to the United States in 1956 after acquiring it from plaintiffs' ancestors in 1942. Subsequently, the United States procured a judgment denoting a fee simple title[2] to the property divesting *231 plaintiffs of their reversionary interests contained in the 1942 land deed. United States v. 926.787 Acres of Land, etc., supra. The trial court in this instance upheld the federal court judgment and recognized the divestiture of plaintiffs' reversionary rights in the property.
The federal condemnation proceeding is one in rem. All previous existing rights, estates or interests in the subject land are obliterated. An unqualified appropriation in fee simple by the United States under 40 U.S.C. 257 et seq. creates a new title. The condemnation award (compensation) stands in the place of the land and the rights of all persons may be treated as though transferred to the award. Duckett and Company v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216; United States v. 25.936 Acres of Land, etc., 153 F.2d 277 (3rd Cir.1946).
Plaintiffs and plaintiffs' ancestors in title were cited to appear in the federal condemnation proceedings. They were dismissed from the proceeding because of their failure to appear. They never received compensation for divestiture of their reversionary interests in the property. Nevertheless, we hold, as did the trial court, that the plaintiffs are now bound by the legal effect of the federal court judgment. Since we are bound by the federal court judgment which declared the United States to have a fee simple title, we are compelled to hold that the donation from the United States to the parish vested defendant with full ownership, i.e., fee simple title to the land. Accordingly, plaintiffs have been divested of their reversionary interests in the property and may no longer assert any reversionary interests against the present owner of the property.
We hold that defendant's legal obligation to convey the property to plaintiffs in accordance with the terms of the 1942 reversionary clause is no longer enforceable as a civil obligation. Accordingly, plaintiffs are without a cause of action to proceed on the basis of the 1942 reversionary clauses.

ISSUE # 2: EFFECT OF POLICE JURY'S RESOLUTION TO SELL; A NEW CONTRACT
Given that the reversionary clauses of 1942 were no longer operative by virtue of the federal court proceedings, the trial court held that there was no written contract or option to sell between the parties and that without such the resolution of September 12, 1979 by the police jury to sell was unenforceable and not binding. We agree.
At the outset, we note that the trial court properly relied upon LSA-C.C. art. 2462 which provides:
"Art. 2462. Specific performance of options and promises to sell
A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party." (Emphasis Added)
After conducting a thorough review of the record, considering all relative written documents and correspondence between the parties, we hold, as did the trial court, that there was no written contract between the parties evidencing an option to purchase in favor of plaintiffs. A contract to purchase or sell immovable property, to be enforceable, must be in writing. Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (1955).
Accordingly, we find no merit to plaintiffs' contention that they possess enforceable rights to repurchase the property subject *232 to a new and second reversionary contract independent of the 1942 clause.

ISSUE # 3: DONATION BY POLITICAL SUBDIVISION
Assuming, however, that there exists a written contract to sell between the parties in conformity with LSA-C.C. art. 2462, by placing far-reaching significance to plaintiffs' written "notices" and the resolution of September 12, 1979, which was later reduced to writing, we find further legal impediment to consummation of the sale to plaintiffs for the terms stated.
Louisiana Constitution, article 7, section 14 prohibits the donation of property by a political subdivision (parish) to any person, association or corporation. Defendant therefore argues that the repurchase of the disputed property by plaintiffs for the nominal purchase price recited in the 1942 sale to defendant would constitute a disguised donation since the price would not be serious. LSA-C.C. art. 2464 provides:
"Art. 2464. Essential elements of price
The price of the sale must be certain, that is to say, fixed and determined by the parties.
It ought to consist of a sum of money, otherwise it would be considered as an exchange.
It ought to be serious, that is to say, there should have been a serious and true agreement that it should be paid.
It ought not to be out of all proportion with the value of the thing; for instance the sale of a plantation for a dollar could not be considered as a fair sale; it would be considered as a donation disguised."
The present market value of the disputed 43.03 acres is $12,500 per acre. The Reaux heirs propose to purchase 10.526 acres at the 1942 price of $189.48 per acre and the Romero heirs propose to purchase 2 acres at $1,840 per acre. This prompted the president of the police jury, on advice of the district attorney, not to sign the acts of sale as ordered by the defendant's resolution of September 12, 1979.
It is inescapable that sale of the property to plaintiffs for the proposed 1942 sale price would be both lesionary and in contravention to the Louisiana Constitution. LSA-C.C. art. 1860 et seq.; Louisiana Constitution, art. VII, § 14 (1974).
Accordingly, even if we were to hold that defendant's resolution to sell the property was of binding effect, the contract remains unenforceable for want of sufficient and adequate consideration.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] The Reaux heirs were to purchase 10.526 acres at $189.48 per acre for a total of $1,944.57. The Romero heirs were to purchase 2 acres at $1,840 per acre for a total of $3,680.
[2] Fee simple title is ownership of an estate with unconditional power of disposition, deviation and descendibility. Blacks, 5th Ed. page 554. In Louisiana this is analogous to full ownership, where the elements of ownership (usus, fructus, abusus) are held in common by one person.