Dear Secretary Bradberry:
On behalf of the Louisiana Department of Transportation and Development (DOTD), you have requested the opinion of this office as to the legality of entering into a boundary agreement with a landowner to rectify an error in the siting of the Interstate 55 (I-55) corridor in the 1950s. This question raises several issues that must be addressed in order to adequately provide an answer. First, what is the ownership status of the current I-55 corridor (hereafter, "actual I-55 corridor")? Second, what is the ownership status of the expropriated land that was supposed to be the I-55 corridor (hereafter, "intended I-55 corridor")? Third, can DOTD use the provision of the Revised Statutes, La. R.S.48:221, to return the expropriated property? Fourth, can a boundary agreement be used to effectuate this property transfer? Each of these questions will be answered in turn below, with specific reference to the unique history of this matter.
As you state in your request, the specifics of this matter are as follows:
 [T]he State of Louisiana, Department of Highways expropriated in fee title a large strip of land 300 feet wide through St. John the Baptist Parish for the construction of Interstate 55 in 1958. A property owner in that parish has now alleged that I-55 was not built on the expropriated land, but was actually built (in the 1960's [sic]) on adjacent land that the property owner now owns.
If the owner's claims as to the improper siting of the actual I-55 corridor are accurate, the question of what is the ownership status of the actual corridor is important. For the remainder of this opinion we shall assume, arguendo, that the owner's claims are accurate, though no survey has yet substantiated them, in order to provide a hypothetical scenario upon which to base the legal analyses contained herein. With respect to the actual I-55 corridor, it is our opinion that the State has gained ownership of this land through acquisitive prescription. Alternatively, we also opine that the State acquired a servitude over the property through a revival of the St. Julien Doctrine, embodied in La. R.S. 19:14. The *Page 2 
extent of this interest is analyzed below. The several theories upon which the State may acquire an interest in property are fully examined below, both in an effort to address the issues raised by your request and to provide guidance for similar future scenarios.
"Acquisitive prescription is a mode of acquiring ownership . . . by possession for a period of time." La. C.C. Art. 3446. Although the Louisiana Supreme Court has recently held that political subdivisions of the State cannot acquire property through acquisitive prescription, it is well settled law that the State, itself, can acquire property in such a manner. Parish ofJefferson v. Bonnabel Properties, Inc., 620 So.2d 1168, 1171
(La. 1993) (stating that "we believe it would be incorrect to conclude that the constitutional framers . . . intended to allow political subdivisions to acquire full ownership of property through acquisitive prescription"); Thompson v. State,688 So.2d 9, 14 (La.App. 1 Cir. 1996); affirmed, 701 So.2d 952 (La. 1997) (stating that "to obtain ownership of land for the construction of highways, the State can acquire the land by purchase, exchange or donation, expropriation of the land, or by acquisitive prescription").
In this scenario, the State began to possess the actual I-55 corridor when work began to construct the roadway in the 1970s (not "in the 1960's" as originally presumed). Assuming that the State believed, based on a potentially faulty survey, that it owned the corridor via the fee title absolute expropriation, then it began to possess the actual corridor in good faith at this time.
The significance of good faith possession is that it allows the possessor to acquire ownership of the thing possessed by prescription of ten years. La. C.C. Art. 3473. Good faith does not, alone, satisfy the requirements of ten-year acquisitive prescription. Louisiana Civil Code Article 3475 notes that the other requirements of ten-year acquisitive prescription are: possession for ten years, just title, and that the thing is susceptible of acquisitive prescription. See e.g., Skillman v.Harvey, 898 So.2d 431, 436 (La.App. 1 Cir. 2004), writdenied, 897 So.2d 610, 2005-0272 (La. 4/1/05). It is unquestionable that the State has possessed the actual I-55 corridor for more than ten years. Additionally, this possession has been corporeal (by virtue of the existence of the road itself), continuous, uninterrupted, peaceable, public, and unequivocal, as required by La. C.C. Art. 3476. The good faith of the State, which La. C.C. Art. 3480 requires to be a reasonable belief, "in light of objective considerations, that [one] is owner of the thing [it] possesses," in this instance is illustrated by the State's construction of I-55 in a corridor that it believed it had acquired. The I-55 corridor qualifies, under La. C.C. Art. 3485, as a thing susceptible of prescription because it was, prior to expropriation, a private thing and the property was not excluded from prescription by legislation. *Page 3 
The matter of just title under the Louisiana Civil Code merits a closer examination for the purposes of analyzing a State claim of ten-year acquisitive prescription of the actual I-55 corridor. Louisiana Civil Code Article 3483 states that:
 A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.
The previous quote raises the question: What interest was conveyed to the State in the expropriation in fee title absolute and is that interest, acquired in the intended I-55 corridor, sufficient to represent just title under La. C.C. Art. 3483 for ten-year acquisitive prescription of the actual I-55 corridor? Although one case suggests that an expropriation in and of itself is enough to acquire title to a piece of land, the discussion is in dicta and is not determinative of the question posed above due to the various types of expropriation that exist. Smith v.Louisiana Power and Light Co., Inc., 638 F.Supp. 361 (E.D. La. 1984). Thus, the following review is undertaken.
"Fee title" is a common law term equated with "fee simple."Piche v. Independent School District No. 621, 634 N.W.2d 193
(Minn.Ct.App. 2001). See also Rio Vista Gas Association v.State of California, 188 Cal.App.2d 555, 10 Cal.Rptr. 559 (Cal. Dist. App. 3d 1961) (using the terms "fee simple absolute" and "fee title absolute" interchangeably). The term "fee simple" only appears in the Louisiana Revised Statutes in ten places and in no case is the term defined. "Fee simple," a term that has appeared in print in England since at least A.D. 1463, refers to an interest in land that belongs to the owner and his or her heirs forever, can be modified with various language to qualify the duration or other terms of the ownership interest (e.g., absolute, conditional, defeasible, or determinable). In the case of the I-55 corridor, the modifying term is "absolute." According to the common law sources, this denotes that the estate "is limited absolutely to a person and his or her heirs and assigns forever without limitation or condition." Black's LawDictionary 615 (Joseph R. Nolan and Jacqueline M. Nolan-Haley, eds., 6th ed., West 1990); Oxford English Dictionary 808 (J.A. Simpson and E.S.C. Weiner, eds., 2nd ed., Clarendon Press 1989), Piche, 634 N.W.2d at 199. Because "fee title absolute" and "fee simple absolute" are equivalent terms under their original common law meanings, so are they equated here. Thus, "fee title absolute," meaning an interest in property, forever, without condition or limitation, can be equated with the civil law term "full ownership." See La. C.C. Art. 477(A). This conclusion is supported by a discussion in Reaux v. IberiaParish Police Jury, 454 So.2d 227 (La.App. 3 Cir. 1984); writdenied, 458 So.2d 120 (La. 1984). Under the foregoing analysis, the "fee title absolute" expropriation allowed the State to gain a full ownership interest in the property for the intended I-55 corridor. *Page 4 
How do the terms of the expropriation relate to the actual I-55 corridor? As to the matter of just title for the purposes of ten-year acquisitive prescription of the actual I-55 corridor, it is our opinion that the terms of the expropriation likely do not satisfy the elements of La. C.C. Art. 3483. The expropriation is a juridical act and it was reduced to writing, was valid in form, and the act was filed for registry in the parish in which the property is situated. Scholarly commentary on the Louisiana Civil Code suggests that a putative title, resulting from confusion as to the location of the conveyed property, is enough to constitute just title. See Len Kilgore, The Ten Year AcquisitivePrescription of Immovables, 36 La. L. Rev. 1000, 1005, 1009 (1976). Despite this single assertion, it is our opinion, based on the case law, that the requirements for just title as to this matter have not been met. Additionally, the foregoing analysis demonstrates that the expropriation transferred full ownership; however, this ownership is limited only to the intended I-55 corridor. The case law interprets the just title article of the Louisiana Civil Code to suggest that an erroneous belief on behalf of the party claiming ten-year acquisitive prescription cannot support ten-year acquisitive prescription if the property being claimed is not specifically and expressly included in the title. See e.g., Waterman v. Tidewater Associated Oil Co.,35 So.2d 225, 236 (La. 1947) (requiring that, "in addition to good faith possession for the required time . . . the deed under which they claim describes and identifies the land with clarity . . ."). See also O'Brien v. Alcus Lands Partnership Trust,577 So.2d 1094, 1097 (La.App. 1 Cir. 1991) (stating that, "[t]he paper title relied upon by one seeking to establish a ten year prescription must sufficiently describe the property so as to transfer its ownership."). Because the expropriation in the current matter is limited to the intended I-55 corridor, it is our opinion that, under the case law, the requirements for just title have not been satisfied due to the lack of the inclusion of the actual I-55 corridor in the property description of the expropriated title.
However, despite the fact that we have opined that the State has not met the requirements for ten-year acquisitive prescription, it is the opinion of this office that the State is owner of the actual I-55 corridor by virtue of thirty-year acquisitive prescription. Thirty-year acquisitive prescription requires only actual possession for thirty years. La. C.C. Art.3486. It is our opinion that this minimal possession requirement, begun via preconstruction activities in the late 1960s and early 1970s in this instance, has certainly been met by the continued use of the property as an active interstate highway corridor, vesting full ownership by thirty-year acquisitive prescription in the state no later than the year 2005. See e.g., Antulovich v.Whitley, 289 So.2d 174 (La.App. 1 Cir. 1973) (holding that surveying and clearing activities are sufficient to support a claim for the beginning of possession for acquisitive prescription).
In addition to the traditional Civil Law modes of acquiring ownership via acquisitive prescription, the Legislature has revived a mechanism commonly known as the St. Julien Doctrine for the acquisition of an interest in property. *Page 5 
The St. Julien Doctrine, which originated in St Julien v. MorganLouisiana Texas Railroad Company, 35 La. Ann. 924, 924 (La. 1883), holds, with respect to a railroad crossing a private party's property, that,
 [h]aving thus permitted the use and occupancy of his land and the construction of a quasi public work thereon without resistance or even complaint, he cannot afterwards require its demolition, nor prevent its use, nor treat the Company erecting as a tenant.
The situation is nearly the same in the I-55 instance. In this situation, the public (as contrasted with the quasi public inSt. Julien) use was the construction of I-55. Additionally, this construction was not opposed. Thus, it cannot now be complained of. This holds true despite the fact that part of St.Julien was overruled in 1976 in Lake, Inc. v. Louisiana Power Light Company, 330 So.2d 914, 918 (La. 1976) (overruling St.Julien as it applies to discontinuous servitudes).[1]
Despite the fact that Lake overruled St. Julien as to the acquisition of a discontinuous servitude (such as a roadway), the Legislature immediately passed Act 504 of 1976, codified at La. R.S. 19:14, that allows the State to acquire a servitude under circumstances similar to the St. Julien Doctrine. This statute is directly on point for the current matter, as it states, in pertinent part, that,
 [i]n any case where the state or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under, or over such property with the consent or acquiescence of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation . . .
In this situation, while we initially believe that the State has acquired the property through thirty-year acquisitive prescription, there is also little doubt that, in the alternative, the State has acquired a servitude over the property (the actual I-55 corridor) under La. R.S. 19:14 by following, identically, the process outlined in the above quotation. In this situation, the State believed, in good faith (based on an erroneous survey), that it had the authority to take possession of the actual I-55 corridor and it then built the roadway thereon. As to the knowledge component of La. R.S. 19:14 on behalf of the landowner, it is doubtful that someone would *Page 6 
not have had, or as a reasonable person should have had, knowledge of an interstate highway being constructed on his or her property due to the sheer enormity of the operations. Thus, it is our opinion that the knowledge component of La. R.S. 19:14
is satisfied in this instance. Further, the law that allows the landowner to seek compensation under La. R.S. 19:14 has prescribed. Under La. R.S. 13:5111(A), "[a]ctions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking." This three-year prescriptive period would have expired in the late 1970s, at the absolute latest. It is also worthy of mention that the St. Julien Doctrine, as codified in La. R.S. 19:14, creates a personal cause of action. Thus, subsequent property owners do not have standing to bring a St. Julien Doctrine action for activity that occurred during their ancestor-in-title's ownership. Brooks v. New Orleans PublicService, Inc., 370 So.2d 686, 690 (La.App. 4 Cir. 1979).
In light of the foregoing analysis, it is our opinion that the State gained the actual I-55 corridor via acquisitive prescription of thirty-years or, in the alternative, gained a servitude over the landowner's property for the passage of I-55. Additionally, because the former grants full ownership and is not considered a taking and because any compensation claims with respect to the latter have prescribed, it is our opinion that nothing is due the landowner for the State's acquisition of either right to the actual I-55 corridor.
Because it is our initial opinion that the State has acquired ownership of the actual I-55 corridor through acquisitive prescription, we deem it necessary to address the question of whether the original landowner can assert a claim against the State for an unconstitutional taking of his property (via the acquisitive prescription) without just compensation under theFifth and Fourteenth Amendments to the United States Constitution or Article I, Secs. 2 and 4 of the Louisiana Constitution.[2] No Louisiana court has addressed this issue. However, guidance from numerous other jurisdictions suggests that once a state has acquired property through acquisitive prescription, claims for unconstitutional takings and just compensation are extinguished. See e.g., City ofGainesville v. Morrison Fertilizer, Inc., 158 S.W.3d 872, 876
(Mo.Ct.App. 2005); White Pine Lumber Co. v. City of Reno,801 P.2d 1370 (Nev. 1990). Based on the litany of cases around the nation that have found that acquisition of property via adverse possession (the common law equivalent of acquisitive prescription) extinguishes takings claims, we are of the opinion that any claims for unconstitutional taking against the State for the actual I-55 corridor have been extinguished due to the State's successful acquisitive prescription against the property. *Page 7 
If, however, a court finds that the thirty-year delay for acquisitive prescription under La. C.C. Art. 3486 has not been met, the landowner may yet be able to assert a petitory action (La. C.C. Art. 3651) against the State, as well as an action for the taking of private property without just compensation. In such an event, when title returns to the landowner, the State has not violated La. Const. Art. VII, Sec. 14's prohibition against donations, as the State has been judicially deemed never to have owned the land in the first place. If, as we opine herein, the thirty-year delay has lapsed and the State has acquisitively prescribed, it is further our opinion that an action for a taking has prescribed. Because there is strong support that ownership relates back to the time that possession began, once property has been acquired through acquisitive prescription, an action for a taking should become nonexistent, as the law does not recognize that anything more than an acquisition of full ownership from the beginning of possession has occurred. See Katherine S. Spaht W. Lee Hargrave, 16 La. Civ. L. Treatise, Matrimonial Regimes § 3.31 (2d ed. 1997).[3] See also, Marcel Planiol George Ripert, Treatise on Civil Law, Vol. 1, Pt. 2, ¶ 2708 (Louisiana State Law Institute, trans., 1939) (stating that, "[w]hen prescription is completed, the possessor is deemed to be owner, not merely from the last day of the delay, but retroactively from the moment when the prescription began to run"). See also, Gabriel Baudry-Lacantinerie A. Tissier, Traité Théorique et Pratique de Droit Civil: Prescription, in Civil LawTranslations, Vol. 5, §§ 102-103 (Louisiana State Law Institute, trans. 1972).
The second issue raised by this request is what is the status of the tract of land that the State actually expropriated in fee title absolute in 1958 for the construction of I-55 (the "intended I-55 corridor", or the tract that did not ultimately become the I-55 corridor)? The State acquired a valid full ownership interest in the intended I-55 tract through the expropriation in 1958. This property is validly the property of the State as though it was purchased in full ownership and remains so today. The fact that the expropriated property was not used for its intended purpose is of no moment with respect to the ownership issue and the fact of nonuse of this property by the State has not caused the State's ownership interest in the property to expire. La. C.C. Art. 481. The nonuse issue does have implications for the duties of DOTD with respect to expropriated property. This matter is considered more fully below. Additionally, any adverse possession of this property in the years since the expropriation similarly will not affect the State's ownership interest in the property, as acquisitive prescription against the State is expressly barred by the Civil Code. La. C.C. Art. 3485 and 3485, cmt. *Page 8 
(b). See also La. R.S. 48:226 (stating that "[p]rescription does not run against immovable property or rights legally acquired by [DOTD] for use as right of way for public highways . . .). Thus, it is the opinion of this office that the property that was expropriated by the State in fee title absolute in 1958 for the purpose of constructing I-55 (i.e., the intended I-55 corridor) remains in the full ownership of the State today.
Your request for an opinion of this office asks if DOTD may use La. R.S. 48:221 to return the expropriated property to the landowner from whom an interest in the actual I-55 corridor was acquired as discussed above. Louisiana Revised Statute 48:221
provides several mechanisms through which excess property may be disposed of by DOTD. Under La. R.S. 48:221(A), when DOTD determines that property is no longer necessary for its purposes, the property may be sold according to the procedural requirements of that statute. The sale of such property is within the discretion of the Secretary of DOTD. La. R.S. 48:221(A)(2). Thus, as a fundamental matter with respect to the property in question, DOTD is not required by law to sell the property (with a few exceptions, discussed below). If property that is the subject of this request proves to be unsellable or virtually valueless property, following appraisal, La. R.S. 48:221(4) permits the Secretary of DOTD the discretion to "[d]onate the property pro rata to the adjacent" landowner(s) or to convey its ownership to the political subdivision in which the land is situated or to the State Land Office.
The discretionary nature of the sale of DOTD property is tempered by the language of La. R.S. 48:221(C). This section places a temporal limit on the discretionary nature of the sale of certain expropriated property and, unlike the ownership question discussed above, does make the fact that the property was not used for its intended purpose important. If, after fifteen years from the date of expropriation, DOTD has not used the property for departmental purposes, the Secretary of DOTD is under a mandatory obligation to declare the unused property as excess and to conduct a private sale of the land to the original owner or his successor in title for either "the original cost [of the land] to the department or the appraised market value, whichever is less . . ." Id. The land may also be disposed of at private sale to "the owner of the land whose property, or any portion thereof, if separated from a highway by such excess area, upon payment of the present appraised market value." Id.
It is our opinion that La. R.S. 48:221(C) does not apply in this instance. Because the amendment to La. R.S. 48:221 that constitutes the mandate to return certain unused expropriated property pursuant to specific procedures [embodied in La. R.S.48:221(C)] was passed, as Act 1029 of 1993, and because this law is substantive in nature, and thus only acts prospectively, it is the opinion of this office that the mandatory return provisions of La. R.S. 48:221(C) do not apply to the property at issue here. This property was acquired many years before the passage of Act1029 of 1993, thus the application of La. R.S. 48:221(C) to the *Page 9 
intended I-55 corridor would constitute a retroactive application of that law. Such a retroactive application would violate the long-held legal truism that substantive law is to have only prospective applicability. See La. C.C. Art. 6; Furlow v.Woodlawn Manor, Inc., 900 So.2d 336 (La.App. 2 Cir. 2005);Unwired Telecom Corp. v. Parish of Calcasieu, 903 So.2d 392,2003-0732 (La. 1/19/05). In the absence of the return provisions for expropriated land under La. R.S. 48:221(C), it is our opinion that DOTD must fall back on the surplus property disposal provisions of La. R.S. 48:221(A).
It is further our opinion that any attempted application of La. R.S. 48:221(C) to the property at issue here is impossible because the price that was paid by the department in the 1958 expropriation is sure to be substantially less than the present appraised value of the property. Thus, following the mandate of La. R.S. 48:221(C) to sell the land to the original owner at the lesser of the price paid by the department or the present appraised market value would cause the State to run afoul of the restriction against donations under La. Const. Art. VII, Sec.14(A). This portion of the Louisiana Constitution states, in pertinent part, that, "[e]xcept as otherwise provided by this constitution . . . property . . . of the state . . . shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." However, the Constitution provides an exception for land that was acquired by the State through expropriation or purchased by the State under threat of expropriation. La. Const. Art. VII, Sec. 14(B)(4). This portion of the Constitution provides, in pertinent part, that, an authorized donation includes:
 the return of property . . . to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation, when the legislature by law declares that the public and necessary purpose which originally supported the expropriation has ceased to exist and orders the return of the property to the former owner under such terms and conditions as specified by the legislature.
Id. No such act of the Legislature has been passed as to this property, thus La. R.S. 48:221(C) is also inapplicable and inappropriate for the above-discussed constitutional reasons.
The other provision of La. R.S. 48:221 that applies to the disposal of expropriated property is La. R.S. 48:221(B). The Secretary of DOTD may exchange property under La. R.S.48:221(B) for other property ". . . needed for the construction or maintenance of a state highway . . ." However, with respect to the property in question, as per the foregoing ownership analysis, there is nothing for the landowner to exchange. The State currently owns both the actual and the intended I-55 corridors. Thus, the landowner would have to offer another tract in exchange for the intended I-55 corridor to even be considered under La. R.S. 48:221(B). It is the opinion of this office that the latter scenario must also fail. *Page 10 
Louisiana Revised Statute 48:221(B) envisions the need of the exchanged property ". . . for the construction or maintenance of a state highway . . ." and limits the exchange of DOTD controlled property to such scenarios. As there is no evidence here that property is needed from the landowner to fulfill construction or maintenance goals of DOTD, it is our opinion that an exchange for the sake of an exchange would violate La. R.S. 48:221(B).
In light of the complete foregoing analysis, it is the opinion of this office that no boundary agreement would resolve the issues raised in your request. This opinion is based on both theories of the State's interest in the property: thirty-year acquisitive prescription and acquisition of a servitude. As to the acquisitive prescription, boundary disputes may only arise between parties with contiguous estates. La. C.C. Art. 784. The suggestion by the landowner in this situation assumes that he owns the land adjacent to the expropriated property and that he will enter into an agreement with DOTD to "allow" that agency to use the land that he claims as his own for the actual I-55 corridor in exchange for his extending his property boundary to include the intended I-55 corridor. It is our opinion that such an agreement is impossible, as the actual I-55 corridor is no longer owned by the landowner, but rather by the State (via the acquisitive prescription discussion above). Thus, the landowner has no contiguous estate with the intended I-55 corridor and it is our opinion that a boundary agreement would be useless to create the results intended by the landowner.
Because it is our opinion that there is no boundary dispute at issue in this situation, we further suggest that the tangential matter of the revocation of prescription based on erroneous surveys under former Civil Code Article 853 of the 1870 Louisiana Civil Code does not affect the acquisitive prescription matters discussion above, as it is limited solely to boundary disputes. See La. C.C. Art. 795, cmt. e; see also Carroll v. Holton,472 So.2d 212 (La.App. 1 Cir. 1985).
As to the servitude, a boundary agreement would be improper, despite the contiguity of the estates of the State and the landowner. This is because it would require the State to essentially donate the expropriated property to the landowner, thus violating La. Const. Art. VII, Sec. 14.
Additionally, our reading of the law clearly shows that there is only one approach for DOTD when handling matters related to the return of expropriated property: Follow the procedural requirements of La. R.S. 48:221. Our opinion is that any scenario dealing with the disposition of the expropriated property discussed herein is subject to the procedural requirements of La. R.S. 48:221.
In the interest of clarity, a recapitulation of our opinion with respect to your request follows. First, it is our opinion that the actual I-55 corridor was acquired in full ownership by the State via acquisitive prescription of thirty years. Alternatively, the State acquired a servitude burdening the property in favor of the *Page 11 
actual I-55 corridor under St. Julien or under La. R.S. 19:14. Second, it is our opinion that the intended I-55 corridor was properly expropriated by the State and remains State property to this day. It may be disposed of pursuant to La. R.S. 48:221(A). Third, it is our opinion that DOTD must use La. R.S. 48:221(A) for the return of the expropriated property. Finally, it is our opinion that a boundary agreement is not the proper method to effectuate the return of the expropriated property.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: ______________________________ RYAN M. SEIDEMANN Assistant Attorney General
[1] Included in discontinuous servitudes are roadways. See Otto Schoenrich, Acquisition of Rights of Way By Prescription, 12 Tul. L. Rev. 226 (1938), for a discussion of discontinuous servitudes. The 1977 revisions to the Louisiana Civil Code did away with the continuous/discontinuous distinction, making such classifications subsequent to January 1, 1978 moot. La. C.C. Art. 740, cmt. a.
[2] Our alternative explanation of the State's interest in the actual I-55 corridor, that the State acquired a servitude on that property under the St. Julien Doctrine or La. R.S. 19:14, is fully analyzed above as to claims for a taking or for compensation.
[3] Spaht and Hargrave note that the one case addressing the relation back of ownership at the accrual of acquisitive prescription, Crouch v. Richardson, 104 So. 728 (La. 1925), which states that ownership does not relate back to the beginning of possession once prescription has occurred is probably no longer good law, as the totality of revisions to the Louisiana Civil Code since that case was decided lend to an interpretation that relation back does occur. This concept is supported by French commentators and forms the basis of this tenet in other civil law jurisdictions.